561 So.2d 373 (1990)
Cecil E. LEE and Irma M. Lee, Appellants,
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellee.
Nos. 88-1747, 88-1993 and 88-2255.
District Court of Appeal of Florida, First District.
May 7, 1990.
Rehearing Denied June 4, 1990.
*374 T. Michael McLeod of Kerrigan, Estess & Rankin, Pensacola, and Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, Miami, for appellants.
J. Nixon Daniel, III, of Beggs & Lane, Pensacola, for appellee.
BARFIELD, Judge.
We agree with appellants that the trial court abused its discretion in directing the verdict for the defendant in this personal injury suit, and in alternatively granting the motion for new trial on the grounds that the verdict was "contrary to the manifest weight of the evidence" and the damage award was "shocking to the judicial conscience."
Cecil Lee and his wife sued Southern Bell for injuries he sustained when its flagman directed him to drive his vehicle over a guy wire. A van in the next lane caught the wire in its undercarriage, pulling it tight into the path of Lee's vehicle, jerking him to a halt and injuring his neck. The accident took place at 7:15 AM on Michigan Avenue, a four lane street with a center passing lane, heavily traveled at that time of day. The traffic had been stopped by two flagmen while two linemen attempted to string the guy wire across the street using a bucket truck. The wire was attached to the tops of both poles and the linemen (one in the bucket and one on the ground, both on the north side of the street) were about to raise it into place by pulling on the wire. Lee's vehicle was stopped several cars back in the outside eastbound lane (on the south side).
While the wire was still only a few inches off the pavement, a pickup truck "broke ranks" and drove toward it. The linemen dropped the wire to prevent an accident, and the pickup truck safely passed over the wire on the pavement. While it would have taken the linemen only 15-20 seconds to raise the wire before they dropped it, they estimated that at that point it would take 3-5 minutes to retrieve and raise the wire, and decided to leave the wire on the pavement and allow the traffic (four lanes of 7-10 cars each) to proceed over it before again stopping traffic to raise the wire.[1] When they saw the wire caught on the van, the men on the ground turned and ran, because they did not want to get hurt and knew "something was fixing to happen."
The Bell Systems Practices manual, "Suspension Strand Placing Methods," section 2.14 ("Road Crossings") states:
Where strand is placed over a highway, exercise extreme care to prevent the strand from becoming entangled with *375 passing vehicles. Use a flagman for control of traffic, if required.
The manual describes several methods of placing strand: using an aerial lift vehicle, in which the strand apparently never touches the ground (section 3); using a moving reel, in which the strand is allowed to pay out on the ground and is then raised into position (section 4); and using a stationary reel, in which the strand may be pulled in on the ground "if traffic does not interfere" (section 5).[2] Section 4.13 provides (emphasis added):
At road crossings, stop traffic on the road being crossed and pay out strand past the first pole on the other side as shown in Fig. 4. Raise strand into position on both crossing poles and tension and snub it before allowing traffic to proceed.[3]
The lineman in the bucket testified that law enforcement personnel would have been available to help control traffic, if the company had requested it. He also testified that it is Southern Bell practice and preference to use flagmen, cones and "men working" signs, to stop traffic, and when possible, to notify law enforcement. He did not know if law enforcement had been notified. The supervisor, who was not present at the time, was apparently aware of the heavy traffic at the site.
The men testified that they were aware of the quoted sections from the manual, but that they had on other occasions let traffic pass over wires and had never had such an accident. They testified that, except for the pickup truck, the motorists did nothing wrong, and that there was nothing Lee could have done to avoid the accident. Bell's claims manager found no evidence that Lee was at fault.
Lee testified he was going about 30 m.p.h. with the traffic, and that it was "like hitting a brick wall." He did not have symptoms at the time of the accident, but woke up the next morning with pain in his head and back. After ten months of chiropractic treatment, he saw Dr. Dennie, a physical medicine and rehabilitation specialist, who found limitations on range of motion in his neck, muscle spasms and severe degenerative disc disease aggravated by the accident. Dr. Dennie stated that the pain and limitation on motion were permanent and that Lee had reached maximum medical improvement with a 7% permanent impairment, although the symptoms would fluctuate. Lee saw Dr. Grimm, an orthopedic surgeon, whose findings were essentially the same as Dr. Dennie's, except that he also treated Lee for numbness in the hands, probably carpal tunnel syndrome. Dr. Grimm prescribed muscle relaxants and anti-inflammatory medication for the chronic neck pain and opined that Lee's symptoms were caused by the accident.
Lee, a 74 year old painter, testified that he was "like a bull" before the accident and had no back or neck pain and no health problems, but that now the pain in his neck and upper back never stops and he eats aspirin "by the handful." He testified that he loves to work and used to help his wife around the house and yard, but now cannot lift more than five pounds and cannot help her. This was corroborated by a friend who testified that Lee was very active before the accident and could outwork alot of young men, but now cannot do much and is always eating aspirin and rubbing his neck and shoulder, and that his wife now "has to do an awful lot."
Lee has worked as a painter since he was fifteen years old. He worked as a paint supervisor for several large companies before he retired in the early 1980's and began working in partnership with Larry Summerall. He testified that before the accident he made $7/hour and worked at least 40 hours/week except during the winter when he worked about half-time, but that he had not been able to work since the accident, although he tried twice to return *376 to painting.[4] Summerall corroborated this testimony and testified that the accident "put me out of business." He stated that there was no better painter than Lee and that he "had to hold him down."
Southern Bell moved for a directed verdict at the close of the plaintiffs' case, asserting that Lee had failed to show that it was negligent or that the accident was foreseeable, i.e., that the risk was reasonably anticipated. Lee's attorney pointed out that negligence, causation and foreseeability are jury questions and argued that Southern Bell performed this operation at the wrong time (rush hour) on a busy street, without law enforcement help to control the traffic, using a four man crew (without a supervisor) who allowed four cars at a time to cross the cable, contrary to its own manual which directs them to stop traffic and "exercise extreme care." The court reserved ruling on the motion.
The mortality tables indicate Lee's life expectancy is 9.6 years (trial was held three years after the accident). In closing argument, Lee's attorney argued that Lee had $432 in unpaid medical bills ($2,421 total bills); that if he had worked five years after the accident he would have made $58,000; and that his pain and suffering, disability, mental anguish, and loss of the capacity to enjoy life was worth $50,000/year for the rest of his life ($538,000 total damages).
Southern Bell's attorney argued that this figure was "ludicrous" and that Southern Bell was simply not at fault for the accident. He argued that Lee "wants you to take the view that because this was Southern Bell's work it must be their fault," but that the test is, "What would a reasonably prudent person do?" He asserted that the lineman who suggested they let the cars pass over the wire after the truck broke ranks made a judgment call based on his experience, that under the circumstances he acted reasonably, and that Lee was going too fast over the wire.
Lee's attorney responded that Lee was not asking for a sympathy vote or a vote against a large company just because it was in control of the project. He pointed out that Southern Bell was on trial, not one lineman. He argued that the company, through its employees, was negligent in the way it handled the job, that the employees did not use reasonable care in this case, that they knew how dangerous it was, and that their failure to use reasonable care resulted in Lee's injuries.
The verdict form, to which Southern Bell had no objection, contained four questions: 1) was Southern Bell negligent, 2) was Lee negligent, 3) if they both were, what percentages of negligence to each, and 4) "What is the total amount (100%) of any damages sustained by Plaintiffs, CECIL E. LEE and IRMA M. LEE, and caused by the incident in question?" The court instructed the jury that on the last question, in one blank "you would fill in in dollars the total amount of damages that you find he [Cecil Lee] has suffered as a result of the incident," and in the other blank "the total amount of damages you assess to her [Irma Lee]," and that the court would reduce the total amount of damages if the jury found Lee negligent. The parties did not object to the instructions. During deliberations, the jury posed this question: "In regard to question # 4 do we place dollar amount or percentage?" The trial judge told them to put in dollars rather than percent. The jury found that Southern Bell was negligent and that Lee was not negligent, and awarded damages of $200,000 to Lee and $50,000 to his wife.
Southern Bell filed a motion for remittitur and a motion for judgment in accordance with its motion for directed verdict, and alternatively, for a new trial. In the latter motion, it asserted that Lee had failed to prove negligence on the part of its employees and had further failed to prove the requisite probable cause and foreseeability. Alternatively, it requested a new trial on the grounds that the verdict was contrary to the manifest weight of the evidence on the issue of liability; that the damages awarded bore no reasonable relationship to the evidence presented and were *377 so excessive as to evidence prejudice, passion or corruption on the part of the jury and ignorance of the evidence presented; that the damages awarded are "shocking to the judicial conscience"; that the question posed by the jury during their deliberations "indicates a basic and fundamental inability to understand the instructions and the verdict form" which precluded the jury from having properly applied the law to the evidence in the case; and that the alternate juror had reported that one of the jurors slept through portions of the trial, thereby rendering the verdict improper.
In their memorandum in opposition to the motion for directed verdict or new trial, the Lees argued that the court properly instructed the jury that Southern Bell's employees were required to meet the standard of "reasonable care" as defined in the negligence instruction (that degree of care which a reasonably careful person would use under like circumstances), and that the jury properly concluded that Southern Bell's employees did not meet this standard when they stretched a steel cable across a heavily traveled four-lane roadway during a peak traffic hour, contrary to Southern Bell's own safety manual. As to foreseeability, they argued that where an intervening cause is foreseeable, the originally negligent actor may still be held liable, and that questions of proximate and intervening cause are uniquely for the jury. As to the remittitur, they argued that the evidence presented would have supported a finding that Lee would have worked five years following the accident ($58,000 in lost wages) and that the award for his pain and suffering and loss of capacity for the enjoyment of life was clearly supported by the testimony.
In a letter, the judge stated that he would grant the motion for directed verdict and that if it were deemed inappropriate, he would grant a new trial on the issues of liability and damages. He explained that he found the evidence did not establish negligence on the part of Southern Bell: "There is shown no reason to believe that permitting vehicles to cross a cable lying flat on the road is likely to result in injury to anyone. All of the expert testimony on the issue shows no reason to anticipate such injury, but to the contrary."[5] He held that res ipsa loquitur does not apply because the van which caused the incident was not under the defendant's exclusive control.[6] He found the verdict "clearly contrary to the manifest weight of the evidence, as to both liability and damages" and that the "grossly excessive amount of the verdict shocks the judicial conscience."
He found it apparent that the jury did not understand the court's instructions, as evidenced by the jury's question and by the fact that "one of the jurors was observed at least dozing during the trial."[7] He found the verdict evidenced the jury's failure to understand and follow the court's instructions, and its prejudice against the defendant, "apparently accepting plaintiffs' contention that `it was the defendant's operation and therefore defendant is responsible' without regard to proof of negligence or damages".[8]
In its order of June 13, 1988, the court granted the motion for judgment in accordance with the defendant's motion for directed verdict, and alternatively granted the motion for new trial with respect to liability and damages "if the directed verdict granted by this order is reversed on appeal." This order was appealed on July 12, 1988 (Case No. 88-1747). On July 26, 1988, the court entered a substitute order withdrawing the previous order, granting the defendant's motion for judgment in accordance with its motion for directed verdict, and granting the alternative motion for new *378 trial "if the directed verdict granted by this order is reversed on appeal." The second order was appealed on August 4, 1988 (Case No. 88-1993). On August 18, 1988, the court entered a final judgment in favor of Southern Bell, ordering the Lees to pay $994 in costs. This order was also appealed (Case No. 88-2255).
The orders granting the motion for directed verdict and alternatively granting the motion for new trial "if the directed verdict granted by this order is reversed on appeal" were not appealable final orders, neither were they "orders granting new trial" appealable under Florida Rules of Appellate Procedure 9.130(a)(4) and 9.110(a). The appeals from those orders (88-1747 and 88-1993) are dismissed, but the orders are reviewable, under rule 9.110(h), in this appeal from the order directing the verdict for the defendant (88-2255).
Appellants assert that despite the well-established principle that a defendant's violation of its own safety rules creates an inference of negligence which alone is sufficient to support a jury's verdict for the plaintiff, and despite the uncontradicted evidence that Southern Bell's employees violated its operating procedures which were promulgated to prevent precisely the type of injury which occurred in this case, the trial court improperly directed a verdict for Southern Bell on the ground that the record was devoid of any evidence of negligence.
They argue that Southern Bell's duty was defined by the scope of the foreseeable risk of its negligent conduct to third parties, an issue which is almost always for the jury's consideration, and that in fulfilling that duty, it was not necessary that Southern Bell anticipate the precise sequence of events which resulted in the injury, only that some injury might occur. They assert that their case was not limited to proof that the same type of accident has occurred so frequently in the past that Southern Bell should have acted to prevent it, but that there are a variety of different ways of proving a defendant knew or should have known of the danger, including proof of the defendant's actual knowledge of the danger. They contend that in this case, Southern Bell's manual and the testimony of its employees provides uncontradicted evidence that it had actual knowledge of the precise danger which resulted in the injury to Cecil Lee, entanglement of vehicles in wire being strung across a road.
Appellants argue that the trial court's alternative order of a new trial on the grounds that the jury's verdict on liability and damages was contrary to the manifest weight of the evidence was improper in light of the substantial and uncontradicted evidence supporting the jury's finding of negligence. On the question of damages, they argue that the jury's undifferentiated award, on a general verdict form approved by Southern Bell, may well forestall appellate review, but that even if the jury awarded $59,000 in tangible damages, the remaining $141,000 for pain and suffering ($41/day for Lee's expected remaining life span) was not so excessive as to justify an order for new trial. They point out that the uncontradicted evidence proved that Lee is in constant pain and will not be able to work as a painter.
Appellee argues that Lee completely failed to present evidence that it breached its duty by violating a reasonable standard of care under the circumstances, or that his injuries were proximately caused by any such breach. It argues that it is not an insurer of safety, and cannot be blamed for injuries for which it was not responsible merely because the injuries occurred at a Southern Bell worksite. It points out that the record contains uncontroverted evidence that the type of accident which injured Lee had never occurred before under similar circumstances, to Southern Bell's knowledge.[9] It contends that Lee's failure to provide evidence showing a breach of its duty, proximate causation, or the foreseeability *379 of Lee's injury entitled it to a directed verdict.
Appellee argues that an order of new trial based upon the trial court's finding that the verdict as to liability and/or damages is contrary to the manifest weight of the evidence may not be disturbed on appeal unless the record clearly demonstrates the judge abused his discretion, even if there is substantial competent evidence to support the jury's verdict. It contends that even if this court determines there is evidence in the record to preclude a directed verdict as to liability, we should not disturb the order for new trial. It argues that the damages awarded were not supported by the evidence, and are so excessive as to indicate jury confusion and prejudice. It suggests that since the trial court was in the best position to evaluate the evidence, its determination that the verdict was contrary to the manifest weight of the evidence and shocked the conscience of the court should be upheld.
Appellants reply that Southern Bell has effectively conceded that its employees' violation of the manual created a jury question regarding the appropriate standard of care, and that Southern Bell has not rebutted any of the decisions cited in the initial brief on this point. They point out that one of the linemen acknowledged that the purpose of the rule requiring them to stop traffic during the entire course of the operation was to prevent "the very thing that occurred in this case." They assert that, even apart from the manual, there was overwhelming and uncontradicted evidence that the employees were required to stop the traffic during the entire course of their work, including the time the wire was on the ground, to prevent the type of accident which occurred in this case. They label as "sheer nonsense" Southern Bell's contention that because this particular kind of accident had never happened before in the employees' experience, it was entitled to judgment as a matter of law. They note that an injury may be foreseeable even when the defendant should not have anticipated the precise sequence of events which caused it, and even in the absence of a prior similar accident. They concede that the absence of a prior accident may be fatal to a plaintiff's claim if there is no other evidence that the defendant should have foreseen the injury, but argue that in the instant case, the jury could have easily concluded that a reasonable person should have foreseen that it was unsafe to allow cars to traverse the wire, given the safety manual and the defendant's own employees' testimony. They argue that where there is substantial evidence that an act of the defendant was a cause of the accident, the plaintiff is not required to prove the precise sequence of events which caused the injury, and that the evidence presented in this case sustained the plaintiff's burden on the issue of causation.
As to the alleged excessiveness of the damage award, they note that Southern Bell has not addressed their argument that its failure to secure a verdict form itemizing the various categories of damages constituted a waiver of the entire argument, since it is impossible to know how much of the verdict was allocated to Lee's lost earning power, and how much to his pain and suffering. They point out that the uncontradicted evidence presented showed that before the injury Lee was an extremely fit, vigorous and aggressive painter, and that after the accident he was not able to work at all and suffered pain and restrictions on his movement. They note there was substantial testimony about the extent to which Lee had assisted in the household chores and that after the accident he was no longer able to do any of them.
Finally, they address the "two invented, make-weight arguments for a new trial which the trial court threw in as additional support for its ruling." They argue that there is no inference from the jury's question regarding the verdict form that it misunderstood the instructions on the points which are at issue in this appeal. They assert that the phrase used by the trial court that "it was the defendant's operation and therefore a defendant is responsible" was not a quotation from the plaintiff's closing argument, but from the defendant's closing, and that this characterization of the plaintiff's position was denied *380 in plaintiff's rebuttal argument. They point out that there was no objection to the plaintiff's closing comments because the argument was perfectly proper, and that the trial court's conclusion to the contrary was plainly erroneous.
We agree with appellants that the trial court abused its discretion in granting the motion for directed verdict, which should be allowed only if the evidence is not legally sufficient to sustain a verdict for the opposing party. Here there was sufficient evidence to take the case to the jury.
We also find that the trial court abused its discretion in granting the motion for a new trial, which should not be granted unless no reasonable jury could have reached the verdict rendered. Florida First National Bank of Jacksonville v. Dent, 404 So.2d 1123 (Fla. 1st DCA), dismissed, 411 So.2d 381 (Fla. 1981). Although a trial judge has broad discretion to grant or deny a motion for new trial, a judge may not substitute his view of the evidence for that of the jury, John Sessa Bulldozing, Inc. v. Papadopoulos, 485 So.2d 1383 (Fla. 4th DCA 1986). An appellate court must test the appropriateness of a trial court's granting of a new trial by applying the abuse of discretion standard, Ford Motor Company v. Kikis, 401 So.2d 1341 (Fla. 1981), and will not find an abuse of discretion if it finds that reasonable men could differ as to the propriety of the trial court's granting of a new trial.
But a verdict can be found to be against the manifest weight of the evidence only when it is clear, obvious and indisputable that the jury was wrong, Crown Cork & Seal Company, Inc. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985). Given the evidence presented in this case, viewed in the light most favorable to support the jury's verdict, we cannot say that it is clear, obvious, and indisputable that the jury was wrong. We conclude therefore that the judge's finding that the verdict was against the manifest weight of the evidence was based solely on his disagreement with the jury's determination on liability, that he improperly reweighed the evidence and substituted his judgment for that of the jury on disputed questions of fact, and that he was not authorized to act as a "seventh juror." See Wackenhut Corporation v. Canty, 359 So.2d 430 (Fla. 1978); Andrews v. Tew, 512 So.2d 276 (Fla. 2d DCA 1987), rev. den., Tew v. Andrews, 519 So.2d 988 (Fla. 1988); Kinsey v. Kelly, 312 So.2d 461 (Fla. 1st DCA 1975), cert. den., Kelly v. Kinsey, 333 So.2d 463 (Fla. 1976).
As pointed out in appellants' arguments, the other grounds for the motion for new trial are without merit and are not supported by the record.
REVERSED and REMANDED for entry of final judgment in accordance with the jury's verdict.
JOANOS, J., concurs.
BOOTH, J., dissents, in part, with written opinion.
BOOTH, Judge, dissenting in part.
I dissent from the reversal of the trial court's award of a new trial.
NOTES
[1] In its opening statement, Southern Bell argued that there was more risk from a vehicle "breaking ranks" while the linemen were raising the wire than from allowing the backed-up vehicles to pass over the wire on the pavement, that they had to make a quick decision, and that they did not have time to consult the manual. While no one remembered anyone honking or yelling impatiently, one flagman thought there was some "easing forward" and opined that it is more likely, once one vehicle breaks rank, that others will follow. The lineman in the bucket felt the flagmen "were being pressured," felt he had to make a spur-of-the-moment decision, didn't have a chance to get the manual, and testified there was nothing in the manual about this situation.
[2] There is some confusion in the record regarding which method was actually being used in this case.
[3] One of the flagmen testified that this section referred to raised cable, not cable lying flat on the pavement.
[4] Summerall does not have enough work for him to work as a supervisor.
[5] The Southern Bell employees were not presented as expert witnesses.
[6] There is no other mention in the record of res ipsa loquitur.
[7] There is no mention of this "fact" in the record except in the motion for new trial, and no affidavit or other evidence of it.
[8] Plaintiff's attorney did not so contend. This language comes from the characterization of the plaintiff's case by the defense attorney in closing argument, denied on rebuttal.
[9] This is a misrepresentation of the record: the only evidence was the four employees' testimony that they were unaware of any accidents.