En el Tribunal Supremo de Puerto Rico

| NAYDA CINTRON ADORNO Y OTROS Demandantes-recurridos V. JOSE A. GOMEZ Y OTROS Demandados-peticionarios | Apelación Y Certiorari 98TSPR18 |
|---|---|

Número del Caso: AC-96-58 , CC-96-228, CC-96-232 CONS.

Abogados de las Partes Peticionarias:
En el AC-96-58 Lic. Pedro Toledo González
En el CC-96-228 – Lic. Gildren S. Caro Pérez y Lic. Eugene F. Hestres
                (Bird, Bird & Hestres)
En el CC-96-232 Lic. Mario Pabón Rosado y Lic. José Luis González
Castañer

Abogado del demandado Dr. José A. Gómez – Lic. Rafael Pont Marchese

Abogado de la Parte Recurrida: Lic. Raúl Tirado, Hijo

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, HUMACAO

Juez del Tribunal de Primera Instancia: HON. CARLOS SOLER AQUINO

Tribunal de circuito de Apelaciones: VI, CAGUAS, HUMACAO, GUAYAMA

Juez Ponente: Hon. Amadeo Murga

Panel integrado por:  Pres. Juez Amadeo Murga y los Jueces Pesante
Martínez y Rivera Pérez

Fecha: 2/22/1999

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Nayda Cintrón Adorno y
Otros

  Demandantes-recurridos
          AC-96-58
          CC-96-228
   v.        CC-96-232  Certiorari

José A. Gómez y otros

  Demandados-peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor Negrón García


San Juan, Puerto Rico a 22 de febrero de 1999

**Al resolver el presente recurso recordamos que "la muerte de un ser querido, más que de él es nuestra, puesto que nosotros la vivimos."[1]**

I

Nayda Cintrón Adorno y sus tres hijos menores demandaron al Dr. José A. Gómez, et. al., alegando que la muerte de Luis M. Ortiz Díaz –cónyuge y progenitor respectivamente–, se debió a negligencia médica. Ortiz Díaz tenía 43 años al momento de su deceso y se desempeñaba como inspector agrícola.

La Sra. Cintrón Adorno e hijos reclamaron, mediante demanda enmendada, **por Ortiz Díaz**, lucro

---

[1] Publio Díaz v. E.L.A., 106 D.P.R. 854, 872 (1978).

cesante calculado en $115,949.00; **pérdida de su capacidad para disfrutar su vida futura valorada en la suma de $875,370.00,** y angustias mentales en la suma de $175,000.00. Nayda reclamó también $175,000.00 por angustias mentales al ver el sufrimiento de su esposo Ortiz Díaz durante su convalecencia y perder su compañía. Los menores solicitaron cada uno $125,000.00 por angustias mentales.

Gómez, et al., impugnaron la partida de $875,370.00 por pérdida del **disfrute de la vida futura** del causante conocida comúnmente como **daños hedónicos.** Argumentaron que la doctrina no reconoce a los herederos el derecho a esa indemnización y sólo pueden reclamar por sus propios sufrimientos y angustias mentales, así como los experimentados por su causante antes de morir y, el lucro cesante, si demuestran dependencia económica. El derecho por la vida del causante se extingue con su muerte y es intransmisible. La compensación sólo procede si el perjudicado **permanece vivo** y prueba que su calidad de vida resultó adversa y apreciablemente afectada por razón de los hechos negligentes.

Por su parte, los demandantes Cintrón Adorno, et al., postularon que la vida es un bien jurídico que forma parte del patrimonio de una persona. Basta que ellos demuestren con certeza razonable que la pérdida de la vida fue por la negligencia de los demandados, para que éstos vengan obligados a resarcirles bajo el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, con independencia de otros daños morales o patrimoniales.

El Tribunal de Instancia, Sala Superior de Humacao (Hon. Carlos Soler Aquino), interlocutoriamente **desestimó** esa partida. En certiorari instado por los demandantes Cintrón Adorno, et al., el Tribunal de Circuito de Apelaciones (Hons. Amadeo Murga, Pesante Martínez y Rivera Pérez) **revocó.** En esencia, dicho foro se basó en que este Tribunal ha repudiado el principio de actio personalis moritur cum persona, reconocido la pérdida de la capacidad del goce de la vida como partida **independiente** a las angustias mentales y permitido la transmisibilidad de las angustias mentales y físicas. Concluyó, que al igual que la pérdida de compañía y afecto tiene una vertiente objetiva y otra subjetiva, también la tiene la incapacidad.

No conforme, el Dr. Gómez, et. al., acudieron ante nos mediante certiorari. Este fue seguido por una apelación del Hospital Domínguez, Inc. y otro certiorari del Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (S.I.M.E.D.).[2]

---

[2] Plantean:

CC-96-228:

1. "Erró el Tribunal de Circuito de Apelaciones al concluir que la pérdida del disfrute de la vida ha sido una partida independiente reconocida por el Honorable Tribunal Supremo de Puerto Rico.

2. Erró el Tribunal de Circuito de Apelaciones al determinar que bajo nuestro ordenamiento jurídico es transmisible a los herederos de un finado la causa de acción de éste por la pérdida del disfrute de [su] vida."

Por ser cuestión novel, consolidamos y expedimos para pautar.

II

El término **daños hedónicos** se utilizó por vez primera en <u>Sherrod</u> v. <u>Berry</u>, 629 F. Supp. 159,164 (1985). Se definen como los "[d]años concedidos en algunas jurisdicciones por **la pérdida del disfrute de la vida, o por el valor de la vida misma, como partida separada del valor económico productivo que una persona lesionada o fallecida hubiere gozado.** Compensación otorgada a la víctima de una lesión personal por las limitaciones en su vida, producidas por la lesión." <u>Black Law Dictionary</u>, (6ta. rev.) 1990, pág. 391, (traducción nuestra). Estos recursos versan sobre la **primera acepción**, esto es, **si nuestro ordenamiento reconoce a los herederos una causa de**

---

<u>AC-96-58</u>:

"Cometió error el Tribunal de Circuito de Apelaciones al revocar la Resolución del Tribunal de Primera Instancia para que se reinstale como causa de acción o partida de daños de la parte demandante por la pérdida del derecho a vivir del señor Luis Manuel Ortiz Díaz."

<u>CC-96-232</u>:

1. "Erró el Tribunal de Circuito de Apelaciones al concluir que la pérdida de disfrute de la vida es una partida independiente de otros componentes del daño moral que debe reconocerse en nuestro ordenamiento.

2. Erró el Tribunal de Circuito de Apelaciones al concluir que una causa de acción por pérdida de disfrute de la vida es transmisible por herencia."

**acción a favor de un finado por la pérdida de los placeres y disfrute de su vida futura**.

Históricamente siempre se reconoció resarcimiento por daños patrimoniales. Pero ni el derecho romano ni el común admitían acción por muerte injustificada. En el romano, la vida de un hombre libre no era cotizable e indemnizar por su muerte menoscababa su vida, equiparándola a la de un esclavo. Los familiares carecían de toda acción privada y el culpable se enfrentaba a una causa pública. Los glosadores se dividieron sobre qué procedimiento seguir y prevaleció la dirección propuesta por **Accursio**. El culpable de una muerte respondía civilmente únicamente por los daños patrimoniales, acción ejercitada por los herederos. En contrario, los naturalistas afirmaban que la vida era un bien fundamental que el ordenamiento tenía que proteger: la víctima sufre un daño con su muerte. En el derecho español, **las Partidas** recogieron la normativa del derecho romano. Inicialmente sólo reconoció una causa de acción por daños a un siervo, no por la muerte de un hombre libre. E. Vicente Domingo, <u>Los Daños Corporales: Tipología y Valoración</u>, Barcelona, Bosch, ed., S.A., 1994, págs. 22 <u>et seq</u>.

En el derecho común inglés tampoco existía tal acción. Si la muerte constituía un delito grave, la acción civil se extinguía al proceder la causa penal como único remedio. La muerte humana no podía ser objeto de una demanda para recobrar daños y perjuicios en un tribunal civil. El principio de <u>actio personalis moritur cum</u>

persona, bajo el cual la acción civil se perdía tanto por la muerte del demandado como del demandante, excluía los remedios civiles. Eventualmente, los tribunales en los Estados Unidos adoptaron este enfoque para las acciones por muerte en el derecho común. Santos P. Amadeo, Acción Civil de Daños y Perjuicios por Muerte Ilegal en Puerto Rico, Río Piedras, Puerto Rico, [S. ed.] 1994, págs. 7-8.

No es hasta la Revolución Industrial que el ordenamiento anglosajón varió por legislación. En 1846, el Parlamento Inglés aprobó la "Ley de Accidentes Fatales", conocida como Ley de Lord Campbell. Creó una acción civil en daños a favor del representante personal del fenecido para beneficio de sus sobrevivientes más allegados. Además de este tipo de estatutos ("Death Statutes"), la mayoría de los ordenamientos anglosajones adoptaron estatutos de supervivencia ("Survival Statutes") por los que la acción del finado no desaparecía con su muerte y era heredada. Autorizaba a los sobrevivientes a cobrar por los sufrimientos del finado, lucro cesante y los gastos emergentes incurridos en el tratamiento antes de fallecer. Amadeo, ob. cit., págs. 8-9. Por otro lado, España y otras jurisdicciones civilistas de origen napoleónico, permitieron causas de acción similares por fiat judicial basándose en los principios generales de responsabilidad extracontractual o aquiliana. Id., págs. 5-10.

### III

Por circunstancias históricas que no nos corresponde enjuiciar, Puerto Rico ha sido testigo del contraste entre

el ordenamiento civil y el derecho común en cuanto a reclamación por muerte injustificada. El ordenamiento español, que rigió hasta 1902 -según resuelto por el Tribunal Supremo de España en la sentencia del 14 de diciembre de 1894-, permitía que viuda e hija menor reclamaran pérdida de afección y falta de ingresos monetarios por la muerte del esposo y padre, respectivamente. Díaz v. The San Juan L. & T. Co., 17 D.P.R. 69, 75-77 (1911). Con anterioridad, sólo eran compensables los daños pecuniarios, no los morales. Más aún, la acción no era heredada, sino que pertenecía a ciertos familiares. Amadeo Murga, Antonio, El Valor de los Daños en la Responsabilidad Civil, Ed. Esmaco, Tomo I (1997), págs. 266-267. Posteriormente, ingresaron en Puerto Rico conceptos del derecho común, tales como los principios dimanantes de los estatutos angloamericanos ("Survival Statutes" y "Death Statutes").

Inicialmente, en González v. The San Juan L. & T. Co., 17 D.P.R. 124, 129 et seq. (1911),[3] reconocimos la causa de acción por daños sufridos **por el sobreviviente** en ocasión de sobrevenir negligentemente la muerte de un ser querido. Vía dictum insinuamos que la madre sobreviviente no podía reclamar a nombre del propio hijo muerto, ni por los daños y perjuicios que él mismo hubiera podido reclamar si no hubiese fallecido. (Págs. 129-130). Sólo procedía la indemnización pecuniaria que debería probar.

---

[3] Revocado por Orta v. P.R., Railway, L. & P. Co., 36 D.P.R. 743 (1927) y Silva Wiscovich v. Weber Dental Mfg. Co., 119 D.P.R. 550 (1987) en otros aspectos.

La cuestión, por demás compleja y sensitiva llevó a este Tribunal a vacilar en reconocer la fuente legal precisa de las reclamaciones por muerte injustificada. En momentos, nuestro ordenamiento se comparó al de California. Maldonado v. The Porto Rico Drug Co., 31 D.P.R. 747, 766-767 (1923). Los daños correspondían a los del sobreviviente. Además de los gastos de asistencia médica y entierro, se permitió indemnización por el valor de los servicios de un hijo menor muerto, hasta que hubiese llegado a la mayoría. También, por primera vez, por esa pérdida admitimos las angustias y sufrimientos morales de los padres.

Aún así, desde temprano, rechazamos aplicar el principio de actio personalis moritur cum persona. Torres v. Sucesión Córdova, 31 D.P.R. 897 (1923). Algunas decisiones entendieron que esa causa de acción se basaba en los Arts. 60 y 61 del Código de Enjuiciamiento Civil, similares al ordenamiento anglosajón, permitiéndole sólo a las personas allí enumeradas reclamar. Arreche v. P.R. Ry., L & P. Co., 31 D.P.R. 445 (1923).

Finalmente resolvimos que la acción por muerte injustificada no emanaba de los Arts. 60 y 61 del Código Civil de Enjuiciamiento Civil, ni de un derecho hereditario, **sino del Código Civil**. Orta v. P.R., Ry., L. & P. Co., supra, 750-751; Carbou Rodríguez v. Mir., 36 D.P.R. 809 (1927); Cabrera v. Boscio, 38 D.P.R. 314 (1928); Porto Rico R. L. & P. Co. v. Corte de Distrito, 38 D.P.R. 342 (1928); Méndez v. Serracante, 53 D.P.R. 849

(1938); <u>Ruberté</u> v. <u>American Railroad Co.</u>, 52 D.P.R. 472 (1938); <u>Díaz</u> v. <u>Autoridad Fuentes Fluviales</u>, 71 D.P.R. 931, 933-934 (1950); <u>Travieso</u> v. <u>Del Toro y Travieso, Int.</u>, 74 D.P.R. 1009, 1015 (1953).

Basado en la doctrina española, en <u>Orta</u> v. <u>P.R., Ry., L. & P. Co.</u>, <u>supra</u>, admitimos que los daños causados por la muerte incluían la esperanza que uno podía tener de que el finado lo mantuviera, de haber sobrevivido. Si el hijo era menor, la ley presumía una pérdida pecuniaria al superviviente del mero hecho de la muerte; no era necesario prueba de tal pérdida. (Págs. 751-752). Esta decisión estableció indubitadamente la procedencia de una causa de acción e indemnización por los daños mentales sufridos por muerte, **sin** requerirse un estatuto tipo "Lord Campbell".

Tiempo después, <u>Cáez</u> v. <u>U.S. Casualty Co.</u>, 80 D.P.R. 754, 762 (1958) y <u>Vda. de Delgado</u> v. <u>Boston Ins. Co.</u>, 101 D.P.R. 598 (1973), identificaron dos causas de acción ejercitables por los herederos: una, por sus propios sufrimientos y pérdidas llamada **acción directa o personal**[4] y, otra, por los daños que la víctima-finado sufrió, **acción heredada o patrimonial**. <u>Cátala</u> v. <u>Coca Cola</u>, 101 D.P.R. 608 (1973).

IV

Nuestro ordenamiento jurídico provee dos tipos de daños: los pecuniarios o económicos y los morales. Los

---

[4] Entre los daños directos recobrables están los daños materiales y la falta de cuidado, compañía, protección, afecto y, daños morales sufridos por los recurridos. <u>Vda. de Morales</u> v. <u>Abella Hernández</u>, 90 D.P.R. 368, 370 (1964).

económicos pueden clasificarse como daños emergentes o lucro cesante; los morales son las angustias físicas, angustias mentales, pérdida de compañía, afecto e incapacidad.

Al principio, no estaba claro si la indemnización incluía los beneficios prospectivos y potenciales inherentes a la relación paterno-filial. Travieso v. Del Toro y Travieso, supra. Sin embargo, Sánchez v. Liberty Mutual Ins. Co., 100 D.P.R. 1 (1971), decidió que los padres tiene una causa de acción por el valor económico de la vida, **partida que denominamos lucro cesante.**

Hoy día, ante la muerte de un hijo, nadie duda que un padre puede reclamar por sus propios daños y, además de los daños por sus sufrimientos mentales causados, entre éstos, la esperanza de una protección o amparo durante la vejez. Zeno Molina v. Vázquez Rosario, 106 D.P.R. 324, 329 (1977). **Estamos ante una pérdida económica que resulta ser un daño directo.**

Posteriormente, en Zurkowsky v. Honeywell, Inc., 112 D.P.R. 271, 275 (1982), **aclaramos que la indemnización por lucro cesante estaba condicionada a dependencia económica. Convertimos así el lucro cesante en un daño que se concede al sobreviviente, no al fenecido, razón por la cual hay que probar la dependencia.** De este modo cualificamos Orta v. P.R., Ry., L. & P. Co., supra; Maldonado v. The Porto Rico Drug Co., supra y Travieso v. Del Toro y Travieso, supra. **La reclamación conocida como lucro cesante al óbito del**

**causante, es una de los dependientes al ellos sufrir los daños al no poder recibir los fondos sobre los cuales dependían. No corresponde ni es una reclamación del finado por lo que éste ha dejado de percibir. Este es el verdadero fundamento por lo cual lógicamente se utiliza la expectativa de vida del beneficiario, no del finado.** Sánchez v. Liberty Mutual, Ins. Co., supra.

En Vda. de Delgado v. Boston Ins. Co., supra, pág. 606 dijimos que "la reparación del daño causado al destruir una vida, hasta donde pueda concebirse la indemnización pecuniaria como justo valor de esa pérdida, es una de las sanciones que el cuerpo social impone al ofensor que bien por acto criminoso o por negligencia es responsable de la muerte de uno de sus integrantes."

**Reiteramos ese pronunciamiento.** Sin embargo, la necesidad de indemnizar por daños en nuestro ordenamiento no es ad infinitum; hemos de recordar que nuestra sociedad refleja un apetito voraz hacia lo material, y no podemos convertir el dolor, el sufrimiento, la tristeza, el desamparo y la frustración, en simplemente otro bien de consumo y tráfico comercial. **La indemnización por daños tiene que corresponder a la prueba; no es una industria forense.** Quiñones López v. Manzano Pozas, res. en 25 de junio de 1996; Torres Solís v. A.E.E., res. en 7 de junio de 1994; Ruiz Guardiola v. Sears Roebuck, 100 D.P.R. 817 (1972); Masa v. A.F.F., 96 D.P.R. 856 (1969); Vda. de Valentín v. E.L.A., 84 D.P.R. 112, 123 (1961); Atiles Moreu v. McClurg, 87 D.P.R. 865, 877 (1963) y Toro Mercado v.

P.R. & Amer. Ins. Co., 87 D.P.R. 658, 660 (1963). **Para indemnizar un daño, hay que realmente sufrirlo y probarlo**.

Bajo esta normativa, hemos rehusado compensar si la víctima no sufrió daño. Una menor que sólo dependió por corto tiempo del finado, y no sufrió angustias mentales debido a su poca edad, no tiene una causa de acción tan extensa por la muerte del compañero adulto de su abuela, con el cual vivió por breve tiempo. Correa v. Autoridad Fuentes Fluviales, 83 D.P.R. 144, 160 (1961). Más aún, los daños y sufrimientos al morir ahogados se limita al poco tiempo antes de éstos sucumbir. Publio Díaz v. E.L.A., supra. En su sustrato, **los sufrimientos y angustias mentales responden al concepto de daño moral**. "[E]s, por exclusión, **el daño no patrimonial**, es el daño que no recae directamente sobre el patrimonio de una persona o que cayendo sobre bienes objetivos, ocasione o no lesión material en los mismos, **causa una perturbación anímica en su titular**, cualquiera que sea el derecho que sobre ello se ostente. **El daño moral es, pues, daño espiritual, daño inferido en derechos de la estricta personalidad o en valores que pertenecen más al campo de la afección que de la realidad material, económica**. El daño moral es la lesión ocasionada en los **bienes no económicos** de una persona, **o la repercusión afectiva desfavorable producida por los daños materiales**". (Énfasis nuestro). Gregorio Ortiz Ricol, Valoración Jurídica del Daño Moral, Rev. Der. y Leg., Tomo 48, Caracas (1959), pág. 245. Por estas mismas razones, en Riley v. Rodríguez de Pacheco, 119 D.P.R. 762 (1987),

reiteramos que una niña de corta edad no podía sufrir daños mentales dentro del significado jurídico compensatorio.

Contrario sensu, hemos indemnizado por la pérdida de la felicidad, llamándola incapacidad. Font v. Viking Construction Corp., 58 D.P.R. 689 (1941) (incapacidad parcial permanente en uso de brazo); Muñoz v. The New York and Porto Rico Steamship, Co., 72 D.P.R. 582 (1951) (cicatriz y desfiguración que afecta la capacidad); Morales Muñoz v. Castro, 85 D.P.R. 288, 297 (1962) (limitación física que impide correr o dedicarse a los deportes); Concepción Guzmán v. A.F.F., 92 D.P.R. 488, 502, 506 (1965) (incapacidad física sin poder hacer vida marital luego del accidente); Moa v. E.L.A., 100 D.P.R. 573, 591–592 (1972) (se tomó en consideración la perdurabilidad del daño sufrido por dicho menor, su edad, **el influjo indeseable** que la condición de su mano izquierda pueda haber tenido en su adolescencia, que tenga o vaya a tener en su juventud y madurez, dentro del círculo familiar, en sus relaciones de amistad, en su labor, y en toda actividad humana en que se vea envuelto); Ruiz Santiago v. E.L.A., 116 D.P.R. 306 (1985) (diferencia entre indemnización por incapacidad o daños físicos futuros y limitación física futura y menoscabo de potencial de generar ingresos); Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985) (indemnización por no poder hacer las cosas que hacia antes).

En todas estas situaciones y causas judiciales **no** nos hemos separado del requisito cardinal de que **tiene que existir un daño**. La incapacidad existe porque la persona ha

sufrido un daño real establecido a satisfacción del Tribunal. Así, en Font v. Viking Construction Corp., supra, la incapacidad no era un daño objetivo sino relacionado con la profesión y actividades del afectado. En Concepción Guzmán v. A.F.F., supra, establecimos la necesidad de tomar en cuenta cómo los daños afectaron la salud, bienestar y felicidad del damnificado. Ramos Rivera v. E.L.A., 90 D.P.R. 828, 831 (1964); Hernández v. Fournier, 80 D.P.R. 93, 103 (1957). No puede ser una pena pasajera, pero se permite el conocimiento judicial de ciertos sufrimientos, como el del padre ver al hijo sufrir. Moa v. E.L.A., supra.

V

Aceptamos que existen prestigiosos civilistas que apoyan el resarcimiento de la pérdida de la vida como un bien particular e indemnizable. Consiste en el daño causado al acortarle la vida, en adelantar el fin inevitable que según los tratadistas, no se pierde con la muerte y se transmite a los herederos. Véase, Federico de Castro y Bravo, La Indemnización por Causa de Muerte, 9 Anuario de Der. Civil, 449 et seq., 1956;[5] L. Diez-Picazo y A. Guillón, Sistema de Derecho Civil, 4ta ed., Madrid, Ed.

---

[5] A pesar que España no ha reconocido una acción por **daños hedónicos**, la tendencia es enfatizar la causa de acción por muerte indebida. En las palabras del Profesor De Castro, su labor se concentró en abogar por la indemnización por causa de muerte "con la esperanza de contribuir en algo a la renacida tendencia que postula un reconocimiento general de 'bienes de la persona', y el mayor respeto a la vida de cada uno; que ha de expresarse, para que no quede en palabra vacía, en el valor más universalmente conocido hoy: el dinerario. El responsable por dolo, culpa o negligencia de la pérdida de una vida humana debe pechar siempre con la indemnización adecuada, y la ciencia jurídica no debe amparar

Tecnos, 1983, Vol. II, págs. 624-625. Esta causa se identifica como el daño causado a la víctima por el mero hecho de morir: un daño objetivo.

En su abono, se postula además, que lo contrario significaría que a un malhechor le conviene matar, en vez de lastimar. **El argumento no es persuasivo**. <u>Primero</u>, no es lo mismo una muerte negligente accidental, que un asesinato u homicidio en el contexto penal. <u>Segundo</u>, la indemnización como remedio no se pierde <u>per se</u>. La muerte de la víctima es indemnizada en muchísimos otros aspectos. La desaparición de un ser querido aumenta el sufrimiento de sus familiares, que en fin, son los que se van a beneficiar de la compensación. Como posible factor disuasivo, prevalece la sanción estatal penal, que sirve de máximo detente social. Equiparar la muerte causada criminalmente con una accidental, es sostener que la indemnización debe emplearse como factor punitivo vengador, lo cual es contrario a nuestra filosofía civilista.[6]

---

artificios ni repetir viejos sofismas, de siempre, utilizados para eludirla."

[6] El jurista Amadeo Murga entiende que la Privación de Compañía y Afecto es un daño objetivo distinto a las angustias mentales que es el sufrimiento. Pero en <u>Batista</u> v. <u>Clínica Juliá</u>, 71 D.P.R. 823, 829 (1950) indirectamente, la reconocimos no como daño objetivo y distinguible, **sino parte de las angustias mentales**. En <u>Roses</u> v. <u>Juliá</u>, 67 D.P.R. 518, 529 (1947) se describió como pérdida pecuniaria; <u>Hernández</u> v. <u>Gobierno de la Capital</u>, 81 D.P.R. 1031, 1042 (1960) (indemnización por la muerte de su hija, y la pérdida de su compañía y afecto); <u>Rodríguez</u> v. <u>A.A.A.</u>, 98 D.P.R. 872-873 (1970) (los niños estaban en edad que necesitaban de la compañía, cariño y cuidado de su madre, **quien los criaba**); <u>Pérez Cruz</u> v. <u>Hospital La Concepción</u>, 115 D.P.R. 721 (1984) (instancia otorgó indemnización global por angustias mentales y pérdida de consorcio. No se expresó sobre sentar

También se aduce que como la pérdida del goce de la vida es perder algo que antes se tenía, debería indemnizarse. Si así fuera, la pérdida de ingresos futuros también sería indemnizable y sabemos que sólo lo es por el tiempo que vivió la víctima o, como acción directa, de los dependientes.

En el caso del menoscabo del potencial de generar ingresos,[7] reconocimos que se presumirá que la persona gozaría las condiciones normales y probables. Si se indemniza por la pérdida de la felicidad, o sea, que por los atardeceres dejados de ver, la pérdida del goce de ver un hijo casarse, o el disfrute de presenciar un nieto crecer -como persona normal-, también tendríamos que aceptar sus sufrimientos, tristezas, frustraciones, decepciones y demás sufrimientos inherentes a la existencia de todo ser humano. Al difunto Cintrón Adorno sólo le cobijarían las presunciones de una existencia normal, que incluyen momentos felices, pero también las tristezas y

---

partida para el hijo, sólo sufrimientos y angustias mentales); Escobar Galarza v. Banuchi Pons, 114 D.P.R. 138 (1983) Sentencia (pérdida de esposa y consorcio); López Surita v. A.F.F., 93 D.P.R. 601 (1966) (otorgó sufrimientos, pérdida de compañía y afecto, derecho a alimentos futuros).

[7] Aún el daño por menoscabo de potencial de generar ingresos no es objetivo. Toma en consideración el tipo de núcleo familiar, grado de estabilidad del hogar, edad, condición de salud física y mental previa, inteligencia, su disposición, educación alcanzada, hábitos de estudio, habilidad en la escuela, talento, intereses específicos, "entretenimientos y destrezas desarrolladas, grado de madurez y experiencia". [D. Fernández y C. E. Toro, El lucro cesante en materia de responsabilidad civil extracontractual: La confusión e la torre de babel, LII Rev. Jur. U.P.R. 31, 68 (1982)]. En cuanto a sus proyecciones, son pertinentes al examen de aquellas otras guías susceptibles de indicar mejores oportunidades para alcanzar destrezas o educación más avanzada. [A. Borrell Maciá, Responsabilidades Derivadas de Culpa Extracontrac-tual Civil, 2da ed., Barcelona, Ed. Bosch, 1958, pág. 266]. Finalmente las leyes de salario mínimo, los promedios de ingreso en las variadas ocupaciones o profesiones prevalecientes, los sistemas de retiro o edad promedio de retiro formen parte del cuadro total.

demás desgracias de una vida cotidiana. **¿Cómo valorarlas si se desconocen? ¿Serían de placer o dolor? ¿En qué intensidad o proporción?**

No todos los tratadistas aceptan el resarcimiento separado por la pérdida de la vida humana. Sobre el particular nos dice Zannoni:

> "Debe quedar en claro, sin embargo, y sobre esto insistiremos cuando se aluda al 'valor económico de la vida humana' y al interés legítimo a la integridad corporal que, que todo ilícito, es decir toda conducta antijurídica –dolosa o culposa– contra los derechos de la personalidad individual, o derechos personalísimos, afecta en primer término y primordialmente un interés no patrimonial. Es decir que el daño directo es extrapatrimonial y, en consecuencia, su resarcimiento queda enmarcado en los parámetros del daño moral." Zannoni E., <u>El Daño en la Responsabilidad Civil</u>, 2da ed., Editorial Astrea, Buenos Aires, (1987), pág. 137.

Más adelante aclara:

> "Parece una perogrullada, pero no está de más puntualizarlo: **ni la ley ni los procedimientos judiciales han atribuido un valor a la vida humana independiente de la consideración de los damnificados por su pérdida.** De modo, que traduciendo la doctrina judicial, podría decirse que, a lo sumo, lo que ella pretende significar es que **la vida humana tiene un valor económico para alguien. Evidentemente no para la víctima** del homicidio, pues, como bien se apunta, **el muerto ya no es un sujeto de derecho, no es "damnificado", en el sentido jurídico, pues no sufre un menoscabo patrimonial ni moral por su propia muerte. Los damnificados son los que le sobreviven, aquellas personas que de entonces en más, se verán privadas del valor económico que representaba para ellas la vida de la víctima.** <u>Id.</u>, pág. 143 citando a Llambías."

Subsiguientemente expone:

> "Y es en ese contexto, como anticipamos, que se dice que la vida tiene un valor económico en sí misma según la prudente valoración judicial. Entonces añade que aparte de los damnificados a

quienes se les confiere este derecho 'ningún damnificado podría alegar pura y simplemente que reclama, por la muerte de la víctima, una indemnización por el mero hecho de que la vida tiene un valor económico en sí misma´." Id., págs. 143-144.

Por último añade:

"La acción resarcitoria del daño moral se funda en la lesión o agravio a bienes jurídicos personales del damnificado, y, por lo tanto, inherentes a la personalidad. En consecuencia, la acción misma **participa del carácter personalísimo** a los términos del art. 498 del Cod. Civil. Las consecuencias de la inherencia personal se traduce en dos consecuencias fundamentales: en primer término, la prohibición del ejercicio de las acciones vía subrogatoria (art. 1196 de Cod. Civil), **y en segundo término, la intransmisibilidad sucesoria** (art. 498, Cod. Civil). Pero esta intransmisibilidad sucesoria no empece a que, si el damnificado directo ejerció, antes de su fallecimiento, la acción resarcitoria del daño moral, ella puede ser continuada por los herederos, pues entonces, entre el conjunto de titularidades transmisibles del causante se incluye el contenido patrimonial del resarcimiento reclamado." Pág. 449. (Énfasis nuestro).

**La doctrina del Tribunal Supremo de España rechaza su procedencia y ha resuelto que el daño corresponde a los sufrimientos de los sobrevivientes.**

Su Sentencia del 24 de noviembre de 1970 declaró:

"Se casa y anula la sentencia recurrida por violación del precepto y doctrina legal referente al perjuicio o daño moral, admitido en nuestro Derecho por reiteradas jurisprudencia y que se caracteriza por su extrapatrimonialidad o contenido no económico, por afectar a los sentimientos, bien del propio interesado o al de otros, **como lo es el que puede producir la muerte de una persona querida;** habiendo cuidado de precisar la aludida doctrina legal, que por no tratarse de un derecho de orden patrimonial, transmisible por herencia, no son los herederos, en su condición de tales, a los que corresponde, sino que lo han de ser aquellos en los que por haber **repercutido en sus sentimientos, se han de estimar como perjudicados; de aquí que la**

**legitimación activa, para reclamar tales perjuicios, no implique la demostración de ser herederos del damnificado, sino la del perjuicio directo sufrido por una persona distinta a causa del daño que generó la culpa extracontractual..."** Albácar López y Santos Briz, <u>Código Civil; Doctrina y Jurisprudencia</u>, Tomo VI, pág. 890.

Igualmente ilustradoras las expresiones de la Sentencia del 30 de octubre de 1981:

"Los titulares del derecho a la reparación o indemnización de daños y perjuicios ocasionados como consecuencia de la muerte de una persona ocurrida en accidente de tráfico, no son los herederos, sino los perjudicados que resulten tales por haber sufrido un daño material o moral como consecuencia de la muerte de la persona de que se trate, pues como es notorio, que sólo las personas puedan ser sujetos de derechos y **la personalidad se extingue por la muerte es evidente que lo que se privó al muerto —la vida— no es susceptible de restitución, ni tampoco de reparación, y también lo es que ningún derecho pudo haber ingresado en su patrimonio una vez producido el fallecimiento, de manera, pues, que el derecho a la indemnización que surge por razón de los daños y perjuicios materiales o morales ocasionados a terceros como consecuencia de la muerte de la víctima, nace en el patrimonio de esos originariamente o <u>iure propio</u>, pero no <u>iure hereditatis</u>, o derivativamente,** ya que el fallecido mal puede trasmitir lo que nunca ingresó en su patrimonio, de ahí pues, que pueda ostentar la condición de perjudicado quien no tenga la condición de heredero y quien tenga esta condición no tener la de perjudicado aunque lo moral es que ambas condiciones coincidan y sean los próximos parientes los que sufran los daños materiales y morales derivados de la muerte de una persona." <u>Id.</u>, pág. 1008.

Véase además, Sentencia del 2 de febrero de 1973, <u>Id.</u>, pág. 1004; Sentencia del 17 de febrero de 1956; C. Rogel Vide, <u>La Responsabilidad Civil Extracontractual</u>, Ed. Curtas, Madrid, (1977), a la pág. 117; Borrell Macia, <u>ob. cit.</u>, págs. 330-331.

No hay duda de que hemos concedido indemnizaciones por la pérdida de la felicidad, pero a pesar del reclamo de que es un daño objetivo, nuestro ordenamiento jurídico lo estima **subjetivo**. Por esta razón la compensación de un padre que tiene una relación cercana con su hijo es distinta cuando el contacto es mínimo. De igual modo, los daños físicos y mentales que sufre una víctima, son desde el momento del acto torticero hasta su muerte; no trascienden su mortal existencia. Vda. Delgado v. Boston Ins., supra. Tales daños no corresponden a su expectativa de vida. Véase Publio Díaz v. E.L.A., supra; Colón v. Municipio de Guayama. 114 D.P.R. 193 (1983). Desde Publio Díaz v. E.L.A., supra, **hemos entendido que el estado de lucidez o conciencia de la víctima es un factor a considerarse al indemnizar los daños causádoles inicialmente. Las angustias mentales por la muerte no son objetivas, sino que requieren analizar la existencia de peculiaridades anímicas especiales, además de la huella profunda esperada.** Pérez Cruz v. Hospital La Concepción, supra, págs. 738-739.

Se aduce que la indemnización procede por la pérdida de los derechos garantizados por la Constitución. La dificultad de este argumento estriba en que al indicarse los factores ha tomarse en consideración, se habla de la edad de la víctima, salud, número de familiares queridos, relaciones con éstos, amigos, así como la comunidad en que residía y su capacidad para sufrir sus propias necesidades, para vivir la vida. **Si tomamos estos factores, algunas**

**vidas valdrían más que otras.** Por tanto, no puede estarse refiriendo a la valoración de los derechos constitucionales perdidos, ya que ante la muerte, no podemos sostener que algunos ciudadanos tengan más derechos que otros o sus derechos valgan más. **En el fondo, estos factores son determinantes para estimar la pérdida y compensación de quienes sobreviven: una persona que tenga óptimamente estas cualidades, dejaría un mayor vacío entre sus familiares, y amigos con quienes compartía y, por ende, generaría en éstos mayores angustias mentales y morales.**

Aunque las partidas de sufrimientos y angustias mentales y la de pérdida del disfrute de la vida entran dentro del marco de los daños morales, son de fuente y naturaleza distinta. **La pérdida del disfrute de la vida según solicitan los demandantes Cintrón Adorno, et al., es un daño sufrido por el finado, al cual como herederos no tienen derecho.** No cuestionamos la capacidad de Ortiz Díaz, mientras vivió de recibir indemnización o transmitir la acción por sus propios daños; no así la pérdida pecuniaria, pues ésta no es heredada sino un daño causado al propio sobreviviente.

La partida de **sufrimientos y angustias mentales** tiene la finalidad de indemnizar el dolor, los sufrimientos físicos y las angustias mentales que padece una persona como consecuencia del acto culposo o negligente. Elba ABM v. U.P.R., 125 D.P.R. 294 (1990); Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583 (1982); Ramos Rivera v. E.L.A., 90 D.P.R. 828 (1964); Vda. de Delgado v. Boston Ins. Co.,

supra; Consejo de Titulares v. C.R.U.V., res. en 16 de febrero de 1993; Pérez Cruz v. Hospital La Concepción, supra; Colón v. Municipio de Guayama, supra; Publio Díaz v. E.L.A., supra. Por su parte, **la pérdida del disfrute de la vida propone** indemnizar por la pérdida de la capacidad de disfrutar la vida, por la privación de experimentar las constantes vivencias del **devenir** del ser humano a quien se ha causado la muerte. La pérdida del goce de la vida no es una lesión identificable, ni tiene marcada probabilidad de trascender más allá del complejo mundo de lo teórico.

Los sufrimientos físicos y angustias mentales presuponen la realidad y concreción de un **daño.** Los casos en los que el perjudicado ha fallecido, y hemos concedido estas partidas, se caracterizan por **la existencia de un daño real, experimentado desde que se infiere hasta que la persona muere.** Así, en Publio Díaz v E.L.A., supra, indicamos que "[a]nte la inexorable realidad de que todo ser humano algún día ha de morir, confesamos una vez más las limitaciones y lo angustioso de la gestión judicial de valorar este tipo de daños; sin embargo, apuntamos que **factores tales como la naturaleza y extensión de las lesiones; lapso de tiempo transcurrido entre la ocurrencia del daño y la muerte; estado de lucidez o conciencia de la víctima;** disponibilidad o no de asisencia y medicamentos adecuados; tipo de tratamiento recibido; presencia o ausencia de familiares; y cualquier otra circunstancia pertinente, son determinantes para la evaluación de la cuantía". (Enfasis nuestro).

**Por el contrario, la pérdida del disfrute de la vida no constituye un daño real ni concreto en la víctima, pues una vez fallece, está ausente el estado cognoscitivo necesario para este apreciar o percibir un daño, placer o beneficio.** Estamos sólo ante un daño hipotético, inexistente, no concreto. "El daño debe ser cierto, realmente existente, lo que excluye los puramente hipotéticos o eventuales, pues pueden producirse o no". L.D. Picazo y A. Gullón, Sistema de Derecho Civil, ob. cit., pág. 622.[8]

Al igual que en Ruiz Santiago v. E.L.A., supra, en múltiples ocasiones hemos compensado daños que inciden de alguna u otra forma en la capacidad de la persona de llevar una vida normal y placentera. **No obstante, nuestras decisiones han estado basadas en que consideramos estos daños como un elemento derivado de la partida de sufrimientos y angustias mentales. Su común denominador es que la víctima no murió ni entró en un estado de inconsciencia que le impidiera apreciar y sufrir los daños inferídoles.** Concepción Guzmán v. A.F.F., supra; Morales Muñoz v. Castro, supra; Muñoz v. The New York and Porto Rico Steamship Co., supra; Font v. Viking Construction, Corp., supra.

---

[8] Incluso, en Ruiz Santiago v. E.L.A., supra, al reconocer el derecho de un menor a ser compensado por el menoscabo del potencial de generar ingresos, aclaramos que aunque se abordaba "el campo de lo especulativo y conjetural, [lo hacíamos] con la **idea fija de que se producirá en el futuro como un hecho cierto y no eventual**, una pérdida de ingresos en función de cierto grado de incapacidad física o total del menor". (Pág. 319).

VI

El Art. 1802 del Código Civil, como principio rector de la doctrina de responsabilidad civil extracontractual, postula que "[e]l que por acción u omisión cause **daño** a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 L.P.R.A. 5141. (Enfasis nuestro). Exige probar (1) la existencia de un **daño real**, (2) culpa o negligencia y (3) relación causal entre el daño y la conducta culposa o negligente.[9]

---

[9] Montalvo Feliciano v. Cruz Concepción, res. en 4 de febrero de 1998; Ramírez Salcedo v. E.L.A., res. en 19 de marzo de 1996; Tormos Arroyo v. Departamento de Instrucción Pública, res. en 13 de marzo de 1996; Monllor Arzola v. Sociedad Legal de Gananciales, res. en 13 de junio de 1995; Soto Cabral v. E.L.A., res. en 21 de abril de 1995; Vélez Rodríguez v. Amaro Cora, res. en 10 de abril de 1995; Sepúlveda v. Barreto, res. en 23 de diciembre de 1994; Miranda v. E.L.A., res. en 7 de diciembre de 1994; Pressure Vessels v. Empire Gas, res. en 23 de noviembre de 1994; Ojeda Ojeda v. El Vocero, res. en 26 de octubre de 1994; Santini Rivera v. Serv. Air, Inc., res. en 12 de septiembre de 1994; Ortiz Torres v. K & A Developers, res. en 25 de mayo de 1994; Sucn. Pacheco Otero v. Eastern Medical Associates, res. en 6 de abril de 1994; Defendini Collazo v. E.L.A., res. en 15 de julio de 1993; J.A.D.M. v. Centro Comercial Plaza Carolina, res. en 19 de febrero de 1993; Torres Maldonado v. J.C. Penney, res. en 3 de junio de 1992; Elba A.B.M. v. Univ. de Puerto Rico, 125 D.P.R. 294 (1990); Arroyo López v. E.L.A., 126 D.P.R. 682 (1990).

De Angel Yagüez, La Responsabilidad Civil, (1988) págs. 41-46; R. Badenes Gasset, Conceptos Fundamentales del Derecho, 7ma. ed., Barcelona-México 1987, pág. 196; Brau del Toro, Daños y Perjuicios Extracontractuales, Vol. I, 2da. Ed. 1986, pág. 180; Lacruz, Derecho de Obligaciones, V. 1, 2da. ed., Barcelona 1985, pág. 497 y ss.; Diez Picazo y Gullón, Sistema de Derecho Civil, Vol. II, 4ta. Ed. 1984, pág. 120; Bustamante Alsina, Teoría General de la Responsabilidad Civil, 4ta. Ed. 1983, pág. 86; J. Puig Brutau, Fundamentos de Derecho Civil, T. II, V. III, 1ra. ed., Barcelona 1983, pág. 80 y ss.; D. Espín Cánovas, Manual de Derecho Civil Español, V. III, Madrid 1983, pág. 501; Scaevola, Código Civil, T. XXXI, 2da. ed. Madrid 1974, pág. 334 y ss.; J. Santos Briz, Derecho Civil: Teoría y Práctica, T. III, Madrid 1973, pág. 491 y ss.; F. Puig Peña, Tratado de Derecho Civil Español, T. IV, V. II, 2da. ed., Madrid 1973, pág. 677; Borrell Macia, Responsabilidades Derivadas de Culpa Extracontractual Civil,

Hemos visto cómo desde principios de siglo nuestra doctrina jurisprudencial ha expandido paulatinamente los parámetros de lo que constituyen daños compensables con miras a lograr la más completa y justiciera reparación del daño inferido, concepto que se ha caracterizado como "el menoscabo que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio". Galib Frangie v. El Vocero, supra. Maldonado Rodríguez v. Banco Central Corp., res. 21 de abril de 1995; Soto Cabral v. E.L.A., supra; Santini Rivera v. Serv. Air, Inc., supra; Miranda v. E.L.A., supra; García Pagán v. Shiley, 122 D.P.R. 193, 205-206 (1988).

Esta visión decisoria se apuntala en que "[n]o está en las manos del hombre descartar del mundo de la realidad hechos acaecidos. A lo sumo se podrán detener sus efectos presentes y futuros mediante ciertas providencias y precauciones, pero nunca borrar las ya ocurridas y realizadas. Por eso cuando se ha producido un daño que el derecho ordena reparar, lo único hacedero es cortar el paso a sus consecuencias mientras se estén gestando." H.A. Fischer, Los Daños Civiles y Su Reparación, Madrid, Biblioteca de la Revista de Derecho Privado, 1928, pág. 133. "[A]l adjudicar daños estamos conscientes que el dolor humano (físico y espiritual) no es similar ni pecuniariamente cotizable. El dinero y el dolor 'son bienes

_____

(1958) págs. 61-73; J.W. Hedeman, Derecho de Obligaciones, V. III, Madrid 1958, pág. 512.

de tan distinta categoría que no cabe comparación. Pero si el dinero no es suficiente para reparar este tipo de daños, es preferible que la víctima reciba una indemnización insuficiente a que no reciba ninguna. Por tanto, aunque el dinero no pueda ser parangonado con el dolor es posible proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido'. Ataz López, op. cit., pág. 328." Riley v. Rodríguez de Pacheco, 119 D.P.R. 762 (1987). "El dinero no tiende a restaurar, sino a resarcir: el acreedor no obtiene, a título de reparación, lo mismo que sin el daño hubiera conseguido, sino otra cosa: una suma en metálico. El derecho elige este recurso económico de resarcimiento a sabiendas de que no se ajusta al principio fundamental que preside la reparación de los daños." H.A. Fischer, ob. cit., págs. 133-134.

Hasta el presente, nuestra casuística ha reconocido los daños no patrimoniales o morales, consistentes de los sufrimientos físicos y las angustias mentales y, los daños patrimoniales compuestos por el daño emergente y el lucro cesante. También, como daño no patrimonial, el causado por la pérdida de afecto.

Tal y como ha ocurrido en nuestra jurisdicción, en varias ocasiones los tribunales norteamericanos han

concedido daños en casos en que la víctima no murió.[10] Sin

embargo, existen profundas discrepancias en torno a la

procedencia de la concesión de **daños hedónicos**, aún en

situaciones donde el perjudicado vive, pero en permanente

estado de inconsciencia.[11] Algunos lo han rechazado,[12] otros

---

[10] Eyoma v. Falco, 589 A. 2d. 653 (1991); Clement v. Consolidated Rail Corp., 734 F. Supp. 151 (1989); Burnham v. Frey-Shoemaker-Colbert-Brodnax, 445 So. 2d. 477 (1984); Phillips v. U.S., 575 F. Supp. 1309 (1983); McNeill v. United States, 519 F. Supp. 283 (1981); Jackson v. United States, 526 F. Supp. 1149 (1981); Buttrey v. Coulson, 620 P. 2d. 549 (1980); Mariner v. Marsden, 610 P. 2d. 6 (1980); Swiler v. Baker's Super Market,Inc., 277 N.W. 2d. 697 (1979); Anunti v. Payette, 268 N.W. 2d. 52 (1978); Lebesco v. Southeastern P.A. Transp. Auth., 380 A. 2d. 848 (1977); Hildyard v. Western Fasteners, Inc., 522 P. 2d. 596, 601 (1974); Isgett v. Seaboard Coast Line R.R., 332 F. Supp. 1127, 1143 (1971); Powell v. Hegney, 239 So. 2d. 599 (1970); Nice v. Chesapeake & Ohio Ry., 305 F. Supp. 1167 (1969); Basset v. Milwaukee Northern Ry., 170 N.W. 944 (1919).

[11] En Flannery v. United States, 718 F. 2d. 108 (1983), donde la persona perjudicada quedó en permanente estado comatoso, el Tribunal se negó a conceder daños hedónicos al concluir que concederlos, además de los que ya había sufrido o experimentado la víctima, constituía una medida punitiva. Imponer esa compensación no brindaba a la víctima ningún beneficio al estar impedida de utilizar el dinero en la satisfacción de sus necesidades y placeres.

Al igual que en Flannery, supra, el Tribunal de New York en MacDougal v. Garber, 73 N.Y. 2d. 246, 536 N.E. 2d. 372 (1989), revocó una decisión de los tribunales inferiores que concedieron daños por la pérdida del disfrute de la vida a una persona en estado comatoso. Se señaló que era requisito indispensable que la persona **tuviera algún grado de conciencia para que procediera la partida**. De lo contrario, no se estaría ante la compensación de un agravio, sino ante daños punitivos. Resolvió que la compensación de la pérdida del disfrute de la vida, a una víctima en estado comatoso, era **punitiva**, pues no significaba ni tenía ninguna utilidad a ella. Sin embargo, en Holston v. Sister of Third Order, 618 N.E. 2d. 334 (1993), el Tribunal Apelativo de Illinois resolvió que eran compensables los daños hedónicos, aún cuando la víctima no estuviera consciente del daño. Dunn v. Cadiente, 503 N.E. 2d. 915 (1987); McNeill v. U.S., 519 F. Supp. 283 (1981).

[12] McDougal v. Garber, supra; Nemmers v. U. S., 681 F. Supp. 567 (1988); Burke v. U.S., 605 F. Supp. 981 (1985); Poyzer v. McGraw, 360 N.W. 2d. 748 (1985); City of Columbus

no la han reconocido específicamente como daños hedónicos, pero la han considerado al determinar y evaluar la cuantía del resarcimiento.[13] Otras decisiones la conceden como parte de las angustias y sufrimientos mentales.[14] No obstante, en los últimos años ha habido un aumento en el número de sentencias que distinguen los **daños hedónicos** de los sufrimientos y angustias mentales.[15]

---

v. Strassner, 25 N.E. 65 (1980); Northern Indiana Public Serv. Co. v. Robinson, 18 N.E. 2d. 933 (1939); Hogan v. Santa Fe Trail Transp. Co., 85 P. 2d. 28 (1938); Louisville Gas Co. v. Fuller, 92 S.W. 566 (1906).

[13] Averna v. Industrial Fabrication and Marine Service, Inc., 562 So. 2d. 1157 (1990); Lee v. Southern Bell Telephone & Telegraph Co., 561 So. 2d. 373 (1990); Brown v. McDonald's Corp., 428 So. 2d. 560 (1983); Ossenfort v. Associated Milk Producers, Inc., 254 N.W. 2d. 672 (1977); Packard v. Whitten, 274 A. 2d. 169 (1971); Dagnello v. Long Island R.R., 289 F. 2d. 797 (1961).

[14] Westcott v. Crinklaw, 133 F. 3d. 658 (1998); Sullivan v. U.S. Gypsum Co., 862 F. Supp. 317 (1994); Wilt v. Buracker, 443 S.E. 2d. 196 (1993), cert. denied 511 U.S. 1192 (1994); Lombardo v. Hoag, 634 A. 2d. 550 (1993); Foster v. Trafalgar House Oil & Gas, 603 So. 2d. 284 (1992); Ortega v. Plexco, 793 F. Supp. 298 (1991); Boyd v. Bulala, 905 F. 2d. 764 (1990); Canfield v. Sandock, 563 N.E. 2d. 1279 (1990); Sterner v. Wesley College, 747 F. Supp. 263 (1990); McDougal v. Garber, supra; Nichols v. Estabrook, 741 F. Supp. 325 (1989); Stroud v. Stroud, 385 S.E. 2d. 205 (1989); Marks v. Gaskill, 546 N.E. 2d. 1245 (1989); Seifert v. Bland, 546 N.E. 2d. 1242 (1989); Leiker v. Gafford, 778 P. 2d. 823 (1989); Leonard v. Parrish, 420 N.W. 2d. 629 (1988); Canfield v. Sandcock, 546 N.E. 2d. 1237 (1987); Poyzer v. McGraw, supra; Swanson v. United States, 557 F. Supp. 1041 (1983); MacDonald v. United States, 555 F. Supp. 935 (1983); Blodgett v. Olympic Sav. and Loan Assn., 646 P. 2d. 139 (1982); Fuston v. U.S., 513 F. Supp. 1000 (1981); Judd v. Rowley's Cherry, 611 P. 2d. 1216 (1980); Willinger v. Mercy Catholic Med., 393 A. 2d. 1188 (1978); Winfield v. People Drug Store, Inc., 379 A. 2d. 685 (1977); Degen v. Bayman, 241 N.W. 2d. 703 (1976); Dugas v. Kansas City Southern Railway, 473 F. 2d. 821 (1973); Tyminski v. United States, 481 F. 2d. 257 (1973); Winter v. Pa. R.R. Co., 68 A. 2d. 513 (1949).

[15] Rufino v. United States, 829 F. 2d. 354 (1987); Shaw v. United States, 741 F. 2d. 1202 (1983); Dyer v. United States, 551 F. Supp. 1266 (1982); McNeill v. United States, supra; Thompson v. National R.R. Passenger Corp., 621 F. 2d.

**En Puerto Rico la doctrina de responsabilidad civil extracontractual se rige por nuestra tradición civilista. No estamos obligados a seguir indefectiblemente enfoques de raíces distintas a nuestro ordenamiento primario.**

Reafirmamos pues, que por ser los sufrimientos físicos y las angustias mentales daños reales, cuya ocurrencia tiene lugar mientras la persona **está viva y consciente**, su causa de acción para "reclamar por sus graves daños... es un bien patrimonial, transmitido por su muerte a sus herederos y reclamable por éstos como parte que es de su herencia..." Vda. De Delgado v. Boston Ins. Co., supra, pág. 607. Ahora bien, esa no es la situación configurada por los **daños hedónicos en la acepción del caso de autos: la pérdida del disfrute de la vida del fallecido Ortiz Díaz**. Estos alegados daños, por ser futuros e inexistentes, productos de una ficción –**no existe vida alguna que tenga placeres o sufra**–, no son susceptibles de ser compensados como partida independiente.

Se dictará sentencia y revocará la del Tribunal de Circuito de Apelaciones.


ANTONIO S. NEGRON GARCIA
Juez Asociado

---

814, Cert. denied, 449 U.S. 1035 (1980); Pierce v. New York Cent. R.R., 409 F. 2d. 1392 (1969).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nayda Cintrón Adorno y
Otros

                           AC-96-58

    Demandantes-recurridos        CC-96-228

                           CC-96-232

                                   Certiorari

       v.

José A. Gómez y otros


    Demandados-peticionarios


SENTENCIA


San Juan, Puerto Rico a 22 de febrero de 1999


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca la Sentencia del Tribunal de Circuito de Apelaciones de fecha 28 de mayo de 1996.

    Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente a la cual se une la Juez Asociada señora Naveira de Rodón.


                       Isabel Llompart Zeno
               Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nayda Cintrón Adorno y
Otros

    Demandantes-recurridos           AC-96-58
                                       CC-96-228
          v.                    CC-96-232

José A. Gómez y Otros

    Demandados-peticionarios

Opinión disidente emitida por el Juez Asociado señor Fuster Berlingeri, a la cual se une la Juez Asociada señora Naveira de Rodón.

San Juan, Puerto Rico, a 22 de febrero de 1999.

Como es sabido, en nuestra jurisdicción se ha rechazado ya la antigua y desacreditada norma de que la acción personal muere con la persona. En Vda. de Delgado v. Boston Insurance Company, 101 D.P.R. 598 (1973); y luego en Consejo de Titulares v. C.R.U.V., 132 D.P.R.___, Op. del 16 de febrero de 1993, 93 JTS 25, excluimos de nuestro ordenamiento jurídico la máxima preceptiva de que la *actio personalis moritur cum persona.* Amparándonos en la fundamental premisa de nuestro derecho civil de que los herederos constituyen la continuación de la personalidad jurídica del causante, y por ello suceden al finado en todos sus derechos, resolvimos en los casos citados que la causa de acción civil reparadora del daño inferido al causante constituye un bien

patrimonial transmisible a los herederos por la muerte de su causante. Id.

Es menester resaltar que la norma aludida sobre la transmisibilidad hereditaria de la acción patrimonial que tenía el causante no depende de que el finado haya iniciado personalmente la causa de acción en cuestión. En _Vda. de Delgado v. Boston Insurance Company_, _supra_, atendimos este asunto con plena deliberación y resolvimos expresamente que:

> "El derecho de los sucesores no depende de ningún trámite procesal iniciado por su causante; arranca del acto torticero mismo. . ." (Enfasis suplido)

En Puerto Rico, pues, el derecho del finado a obtener la indemnización de los daños que se le hayan causado, no es uno de los derechos personalísimos que mueren con la persona, sino que se transmite a los herederos del finado, no importa la etapa de su trámite procesal y aun cuando éste no hubiese iniciado la reclamación judicial correspondiente.

En vista de lo anterior, la cuestión medular que tenemos ante nos en el caso de autos se reduce esencialmente a determinar si en nuestra jurisdicción existe una causa de acción por la pérdida de la vida en sí. De existir tal causa de acción, ésta sería claramente transmisible por herencia, conforme lo señalado en los párrafos anteriores.

No cabe duda alguna de que cualquier persona en nuestro país tiene derecho a que se le indemnice no sólo por los daños económicos o materiales que otro le cause por su culpa o negligencia, sino también por los sufrimientos y angustias mentales que la persona haya experimentado. La cuestión ante nos es si la pérdida de la vida en sí constituye también un daño reparable. Si lo es, entonces la acción civil para obtener indemnización por dicho daño, es transmisible por herencia. Examinemos, pues, si el responsable de la pérdida de la vida de una persona tiene la obligación jurídica de indemnizar, por constituir tal pérdida un daño reparable.

En Puerto Rico, el Artículo 1802 del Código Civil consagra una norma de reparación a todo daño material o moral, que es amplia y abarcadora. Se trata de una de las piedras angulares de nuestro ordenamiento jurídico, que es **"de gran alcance"**, y que se concibe **"con amplitud de criterio"**. Santini Rivera v. Serv. Air, Inc., 137 D.P.R. ___, Op. del 12 de septiembre de 1994, 94 JTS 121. En múltiples ocasiones hemos reconocido **"su dilatado ámbito reparador"**, Vda. de Delgado v. Boston Insurance Company, supra, a la pág. 599. En particular, hemos resuelto que **"daño** es **todo** aquel menoscabo material o moral que sufre una persona **ya en sus bienes vitales naturales**, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otras". García Pagán v. Shiley Caribbean, 122 D.P.R. 193 (1988).

Al amparo de esta concepción tan incluyente de lo que constituye un daño reparable, es claro que la pérdida de la vida en sí es indemnizable como una categoría separada e independiente de otras que lo integran. Aunque en otros contextos, hemos reconocido ya la extraordinaria protección que le merece al Derecho la vida del ser humano. En Zeno Molina v. Vázquez Rosario, 106 D.P.R. 324 (1977) afirmamos que:

> "La **vida humana** es un **bien jurídico**, un valor económico como cualquier otro, **más digno de protección que ninguno. . ."**

Y en Soto Cabral v. E.L.A., 140 D.P.R. ___, Op. del Tribunal del 21 de abril de 1995, 95 JTS 49, resolvimos que:

> ". . . la vida humana es **el valor más importante** sobre el cual descansan todos los demás derechos. . . **La pérdida de la vida humana o el daño a ésta, son resarcibles pues, como la pérdida o lesión del bien jurídico más importante.**

A la luz de estas sencillas pero contundentes expresiones normativas nuestras, que claramente reconocen el valor jurídico permanente de la vida humana, fuerza concluir que la pérdida de ésta es indemnizable, sobre todo en un régimen como el nuestro, que se caracteriza por la reparación amplia y abarcadora de todo daño a los

bienes vitales naturales. Poco sentido tendría que se indemnice rutinariamente a la persona que sufre lesiones incapacitantes, por habérsele afectado parcialmente su derecho a la vida, pero que se niegue reparación por la pérdida de la vida en sí. Constituiría una cruda inconsistencia que el derecho se afane por reparar el daño a intereses materiales y morales ordinarios pero rehuse valorar el más importante de todos los intereses jurídicos. En recta juricidad, la pérdida de la vida humana de por sí debe ser resarcible.

### III

Como la propia mayoría admite, prestigiosos civilistas apoyan el resarcimiento de la pérdida de la vida como un bien particular. Muchos de ellos están citados en la ilustrada sentencia del foro apelativo que se impugna ante nos. Se trata de juristas tan renombrados como J. Santos Briz, Federico de Castro y Bravo, L. Diez-Picaso, A. Gullón, A. de Cupis y otros.[16] En nuestra propia jurisdicción, J. Cuevas Segarra también ha sostenido este criterio visionario, y ha traído a nuestra atención las opiniones de notables juristas de otras partes del mundo, particularmente de comentaristas argentinos, que sostienen que la pérdida de la vida humana constituye un daño reparable.[17]

Este Foro ya en una ocasión expresó la poderosa razón que justifica de manera inexorable la postura que defendemos en esta opinión. De modo elocuente, afirmamos en <u>Vda. de Delgado v. Boston Insurance Company</u>, <u>supra</u>, pág. 606, que:

> "La reparación del daño causado al destruir una vida, hasta donde pueda concebirse la indemnización pecuniaria como justo valor de esa pérdida, es una de las sanciones que el cuerpo social impone al ofensor que bien por acto criminoso o por negligencia es responsable de la muerte de uno de sus integrantes. Constituiría un sarcasmo y un quebrantamiento de la justicia premiar al autor del acto culposo con inmunidad

---

[16] J. Santos Briz, <u>Derecho de Daños</u>, pág. 279 Madrid (1963); F. de Castro y Bravo, <u>La Indemnización por Causa de Muerte</u>, 9 Anuario de Derecho Civil 449, 504 (1956); L. Diez-Picaso y A. Gullón, <u>Sistema de Derecho Civil</u>, 4ta Ed., 624-625 (1983); A. de Cupis, <u>El Daño</u>, 2da Ed. (1975).

[17] Cuevas Segarra, <u>La responsabilidad Civil y el Daño Extracontractual en Puerto Rico</u>, págs. 205-230 (1993).

parcial. . . La muerte ilegal y la causada por negligencia adquirirían, sin duda, una condición privilegiada que estremece la conciencia educada en el respeto de los altos valores humanos; bajarían al sepulcro no sólo un cuerpo, sino también un derecho. . ."

Como la mayoría hoy se niega a honrar esta elevada concepción del Derecho y de la vida humana que antes habíamos refrendado, yo DISIENTO.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO