Opinión disidente emitida por el
Juez Asociado Señor Mar-tínez Torres,
a la cual se unieron la Jueza Asociada Se-ñora Pabón Charneco y el Juez Asociado Señor Kolthoff Caraballo.
En ocasiones surgen temas interesantes en nuestro que-hacer judicial que nos seducen y nos llevan a realizar ex-presiones innecesarias para resolver un caso. La Opinión que emite hoy este Tribunal es un ejemplo de ello. En este caso, el Tribunal de Primera Instancia y el Tribunal de Apelaciones coindicen en que el peticionario Sr. Carlos Weber Carrillo no probó que sufrió daños como consecuencia de la presunta acción inconstitucional del Estado. Luego de analizar con mucho detenimiento el expediente de este caso y los alegatos de las partes, comparto el criterio de esos foros.
En atención a la norma trillada que establece que en ausencia de pasión, prejuicio, error manifiesto o parciali-dad los foros apelativos estos no deben intervenir con las determinaciones de hechos y la apreciación de la prueba que realiza el foro primario, disiento con mucho respeto del criterio de mis compañeros. Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013); Pueblo v. Millán Pacheco, 182 DPR 595, 642 (2011); Colón v. Lotería, 167 DPR 625, 659 (2006); Lugo v. Municipio Guayama, 163 DPR 208, 221 (2004); Argüello v. Argüello, 155 DPR 62, 78-79 (2001).
La adjudicación correcta de este caso requiere que con-firmemos el dictamen del Tribunal de Apelaciones que desestimó la demanda de daños que presentó el señor Weber Carrillo. Para llegar a ese resultado es innecesario embarcarse en el análisis de derecho de intimidad que contiene la *718 Opinión del Tribunal. Es decir, todo el análisis que elabora la Opinión del Tribunal en cuanto al derecho de intimidad es dictum, ya que es inconsecuente ante el hecho de que no se probaron los daños en una acción de esa naturaleza. Ortiz Chévere et al. v. Srio. Hacienda, 186 DPR 951, 980 (2012); Ortiz v. Panel F.E.I., 155 DPR 219, 252 (2001).
I
La controversia de autos surgió mientras el Negociado de Investigaciones Especiales (NIE) realizaba una investi-gación criminal, que concluyó el 12 de febrero de 2003 con un allanamiento y el subsiguiente arresto de varios indivi-duos residentes de Bayamón en un negocio identificado como “El Mundo de los DVD”. Luego de realizados varios arrestos en el municipio de Bayamón, mientras se llevaba a cabo el diligenciamiento de la orden de allanamiento, una unidad de la cadena de televisión Univisión y el señor Weber Carrillo acudieron a las facilidades del NIE a inda-gar sobre el operativo que se realizaba. El fiscal Miguel Colón Ortiz, Director del NIE para esa fecha, se sorprendió con la llegada de la prensa en un lapso tan corto luego de iniciado el operativo.
La presencia de ese reportero generó preocupación en el fiscal Colón Ortiz, pues pensó que alguien divulgó a la prensa con anticipación el operativo que se realizaba ese día. Ningún funcionario del NIE estaba autorizado a divul-gar a los medios noticiosos el diligenciamiento de una or-den de allanamiento o arresto sin la debida autorización del Director del NIE, de la Secretaria de Justicia o de la Oficina de Prensa del Departamento de Justicia.
El NIE decidió realizar una investigación ante la posi-bilidad de que un miembro suyo generara una llamada sin autorización a los medios noticiosos. Al requerir informa-ción a la compañía Cingular mediante el uso de un *719 subpoena, surgió un número de teléfono como el posible facilitador de la información confidencial divulgada. Una vez obtenida esta información, el fiscal supo que desde el número de teléfono asignado al inspector Jorge Gorritz se originaron tres llamadas a un número telefónico que re-sultó ser ajeno a los números de teléfono de los demás miembros del NIE que participaron en el operativo. Esas tres llamadas fueron realizadas tres horas antes del opera-tivo y mientras este transcurría.
Ante ese hallazgo, el fiscal Francisco Viera Tirado auto-rizó una citación subpoena duces tecum dirigida a la com-pañía Cingular para que informara (1) a quién pertenecía el número en controversia y (2) para que proveyera la re-lación de llamadas correspondientes al mes de febrero de 2003. Así surgió que el referido número pertenecía al señor Weber Carrillo.
La divulgación por un agente del NIE a un tercero de información relacionada con el funcionamiento, la opera-ción o las actividades de dicha agencia constituye un delito grave que atenta contra la integridad de los agentes involucrados. Art. 82(a) del Plan de Reorganización del De-partamento de Justicia de 2011, 3 LPRAAp. XXI. Por tal razón, el fiscal Colón Ortiz, como Director del NIE, ordenó al fiscal Viera Tirado que investigara y, de encontrarse evi-dencia, que encausara criminalmente al agente del NIE que divulgó pormenores del operativo en violación de la ley.
Al NIE no le interesaba investigar a quién se le había filtrado la información, sino qué agente había violado la ley y era responsable de la filtración. El Director del NIE reci-bió en su oficina al Ledo. Antonio Figueroa, abogado del señor Weber Carrillo, y habló por teléfono con este último para confirmar que no había ninguna investigación en su contra y que las investigaciones que aún continuaban te-nían el fin de detectar filtraciones de información confidencial. De los autos no surge que el NIE interviniera *720 con conversaciones telefónicas o conociera el contenido de conversaciones telefónicas iniciadas desde el teléfono del señor Weber Carrillo.
El 29 de septiembre de 2004, el periodista Carlos Weber Carrillo presentó una demanda sobre daños y perjuicios contra el Estado y los fiscales Viera Tirado y Colón Ortiz, entre otros.(1) Sostuvo que su patrono, el canal de televi-sión Univisión, le proveyó un teléfono celular de la compa-ñía Cingular como parte de su trabajo y que el 22 de octu-bre de 2003 supo que el Fiscal Viera Tirado había solicitado a la compañía de celulares que le remitiera copia de los estados mensuales de sus llamadas telefónicas, las cuales se entregaron. Alegó que los codemandados violaron su derecho a la intimidad al intervenir con su teléfono ce-lular sin avisar y sin una orden judicial. En su consecuen-cia, solicitó una indemnización por unas alegadas angus-tias mentales sufridas, que estimó en $650,000.
El 15 de junio de 2009, el Tribunal de Primera Instancia declaró “no ha lugar” la demanda y ordenó su archivo y sobreseimiento. Concluyó, en síntesis, “que de la prueba desfilada no surge que el teléfono del Sr. Weber haya sido intervenido”. Apéndice, pág. 571. Determinó, además, que la acción del fiscal Viera Tirado estaba amparada en la ley orgánica del NIE, la cual reconoce la facultad del fiscal para emitir subpoenas “como parte de la investigación en las relaciones de llamadas de los funcionarios del NIE”. Id. En cuanto a las alegaciones de violación a la expectativa de *721 intimidad y daños y perjuicios, el Tribunal de Primera Ins-tancia determinó
[...] que en este caso no se probó que en efecto al demandante se le haya violado su derecho a una expectativa de privacidad e intimidad respecto a su teléfono celular, además de que no se probó, ni se presentó prueba convincente sobre algún daño real y palpable sufrido por el demandante. Si algún daño ha expe-rimentado el Sr. Weber, no se logró establecer un nexo causal entre dicho daño y las actuaciones realizadas por el Estado y los funcionarios del Negociado de Investigaciones Especiales (NIE). (Énfasis suplido). íd., pág. 570.
Inconforme, el señor Weber Carrillo presentó un recurso de apelación ante el Tribunal de Apelaciones, en el cual hizo cinco señalamientos de error. Luego de los trámites de rigor, el Tribunal de Apelaciones emitió una sentencia en la que confirmó el dictamen del Tribunal de Primera Instancia.
Aún en desacuerdo, el señor Weber Carrillo acude ante este Foro mediante una petición de certiorari. Expresa que el Tribunal de Apelaciones erró al determinar que no existe una expectativa razonable de intimidad sobre la informa-ción o los documentos relacionados con los patrones de uso de su teléfono celular. También sostiene que el Tribunal de Apelaciones se equivocó al determinar que no sufrió daños resarcibles.
Hoy la Opinión del Tribunal resuelve que el Estado violó la intimidad del señor Weber Carrillo. Además, devuelve el caso al foro primario para que se evalúe nuevamente “la prueba de daños y causalidad presentada por el señor Weber a la luz de la violación de su derecho a la intimidad”. Opinión del Tribunal, pág. 716.
II
A. Hemos establecido que para que proceda una recla-mación por daños y perjuicios conforme al Art. 1802 del *722 Código Civil, 31 LPRA sec. 4151, es necesario que haya un acto u omisión culposa o negligente, una relación causal entre el acto o la omisión culposa o negligente, y un daño causado. Véanse: Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010); López v. Porrata Doria, 169 DPR 135, 150 (2006); Pons v. Engebretson, 160 DPR 347, 354 (2003).
Asimismo, hemos expresado que constituye un “daño el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurí-dica y por el cual ha de responder otra persona”. Nieves Díaz v. González Massas, supra, pág. 845. Véanse, además: Ramírez Ferrer v. Conagra Foods PR, 175 DPR 799, 817 (2009); Cintrón Adorno v. Gómez, 147 DPR 576, 583 (1999); Galib Frangie v. El Vocero de P.R., 138 DPR 560, 571 (1995); García Pagán v. Shiley Caribbean, etc., 122 DPR 193, 205-206 (1988).
Sin embargo, no basta la mera existencia de un daño y una acción u omisión negligente. También es necesario que exista un nexo causal entre el daño y el acto culposo o negligente. En nuestra jurisdicción rige la doctrina de la causalidad adecuada, según la cual “ ‘no es causa toda con-dición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general’ ”. Nieves Díaz v. González Massas, supra, pág. 844 Véase, también, López v. Porrata Doria, supra, págs. 151-152.
Nuestro ordenamiento jurídico reconoce dos tipos de da-ños: (1) los daños especiales, también conocidos como daños físicos, económicos o patrimoniales, que recaen sobre bienes objetivos y que, por impactar directamente el patrimonio del perjudicado, son susceptibles de valoración económica, y (2) los daños morales, que son aquellos que re-caen sobre los sentimientos, la dignidad o la estima social del perjudicado. Cintrón Adorno v. Gómez, supra, pág. 587. El daño moral, aunque de naturaleza extrapatrimonial por *723 lesionar bienes no económicos de la persona, puede traer repercusiones sobre el patrimonio del perjudicado. Id. El daño sufrido tiene que ser real, lo que a su vez requiere la concurrencia de tres elementos esenciales: (1) el daño ha de causar una lesión, una pérdida o un menoscabo; (2) el daño ha de recaer sobre bienes o intereses jurídicos de una persona, y (3) el daño ha de ser resarcible de alguna forma. Soto Cabral v. E.L.A., 138 DPR 298, 312 (1995). Véase, en general, J. Santos Briz, La responsabilidad civil, 6ta ed., Madrid, Ed. Montecorvo, 1991.
Por su parte, es norma conocida que el Estado responde por los daños ocasionados por los actos negligentes de sus funcionarios, conforme a la doctrina de responsabilidad civil extracontractual del Art. 1802 del Código Civil, supra. Véanse: Art. 1803 del Código Civil, 31 LPRA sec. 5142; Defendini Collazo et al. v. E.L.A., Cotto, 134 DPR 28, 48-49 (1993); García v. E.L.A., 146 DPR 725, 734 (1998); H. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., Pubs. JTS, 1986, Vol. II, pág. 794. En particular, la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 LPRA see. 3077 et seq., autoriza demandar al Estado en ciertas y determinadas circunstancias. El Art. 2 de la Ley Núm. 104, íd., 32 LPRA see. 3077, permite las acciones en daños y perjuicios a la persona o a la propiedad cuando sean “causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia”.
Así pues, para que un demandante pueda prevalecer en una acción por daños y perjuicios contra el Estado, por las actuaciones u omisiones culposas o negligentes de un funcionario, tiene que establecer: (1) que la persona que le causó daño era agente, funcionario o empleado del ELA y que actuaba en su capacidad oficial al momento de causar *724 el daño; (2) que el agente, funcionario o empleado actuó dentro del marco de su función; (3) que la actuación del empleado del ELA fue negligente y no intencional, y (4) que existe una relación causal entre la conducta culposa y el daño producido. García v. E.L.A., 163 DPR 800, 811—812 (2005); Leyva et al. v. Aristud et al., 132 DPR 489, 510 (1993).
B. En nuestro ordenamiento jurídico, la discreción judicial permea la evaluación de la prueba presentada en los casos y las controversias. Hernández Maldonado v. Taco Maker, 181 DPR 281, 289 (2011); Miranda Cruz y otros v. S.L.G. Ritch, 176 DPR 951, 974 (2009); Trinidad v. Chade, 153 DPR 280, 291 (2001). Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, así como tampoco tiene facultad de sustituir las determinaciones del foro primario por sus propias apreciaciones. Dávila Nieves v. Meléndez Marín, supra, pág. 771; S.L.G. Rivera Carrillo v. A.A.A., 177 DPR 345, 356 (2009); Rolón v. Charlie Car Rental, Inc., 148 DPR 420, 433 (1999).
El fundamento de esa deferencia hacia el Tribunal de Primera Instancia radica en que el juez de ese foro tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor posición que el tribunal apelativo para considerarla. Dávila Nieves v. Meléndez Marín, supra, pág. 771; Sepúlveda v. Depto. de Salud, 145 DPR 560, 573 (1998). Por esa razón se ha reiterado la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hecho, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Dávila Nieves v. Meléndez Marín, supra; Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 67-68 (2009); Argüello v. Argüello, supra, págs. 78-79.
*725 Por ese principio básico de nuestro Derecho, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que “[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportuni-dad que tuvo el tribunal sentenciador para juzgar la credi-bilidad de las personas testigos”.
III
La Opinión del Tribunal expone en la pág. 697 esc. 10, que no va a atender el planteamiento del Estado de que no se probaron daños porque va a referir ese asunto al Tribunal de Primera Instancia. A esos efectos, la Opinión del Tribunal, págs. 715-716, expresa que la razón para devol-ver el caso al foro primario es la preocupación que tiene por la forma como los tribunales de categoría inferior evalua-ron la prueba, pues partían de la premisa de que el señor Weber Carrillo no tenía expectativa de intimidad sobre el registro de llamadas de su teléfono celular. Sin embargo, en la pág. 716 esc. 68, la Opinión de la Mayoría se sumerge en un análisis de la prueba para concluir que el “expedien-te del caso no está desprovisto de evidencia sobre daños”. A diferencia de la opinión del Tribunal, opino que la adjudi-cación sobre los daños que realizó el Tribunal de Primera Instancia está respaldada por la prueba que desfiló o, para ser más preciso, por la que no se presentó.
En su alegato ante esta Curia, el señor Weber Carrillo impugnó la revisión que hizo el Tribunal de Apelaciones sobre el ejercicio de apreciación de la prueba oral del foro primario. También señaló que el Tribunal de Apelaciones debió concederle una indemnización en daños y perjuicios. Luego de analizar con detenimiento el expediente, es me-nester concluir que las determinaciones de hechos están sostenidas por la prueba que se presentó.
*726 En este caso, el señor Weber Carrillo no probó los supuestos daños sufridos. De hecho, surge de la transcripción del juicio que el demandante no pudo establecer la naturaleza y el alcance de los daños alegados. De la Transcripción del Juicio de 5 de febrero de 2009, págs. 123-124, surge lo siguiente:
P. Don Carlos, le pregunto, como consecuencia de los hechos del presente caso, ¿qué angustias y sufrimientos mentales us-ted ha sufrido?
TESTIGO — CARLOS WEBER CARRILLO:
R. Eso es medio difícil de explicar, primero porque a mí no me gusta descubrir mis sentimientos. Pero creo que hay una ... digo, entiendo, que es irracional lo que ha sucedido conmigo, porque esto se podría haber solucionado, supongo yo, que con una llamada por teléfono a mí. (Enfasis suplido). Apéndice, págs. 491-492.
Además de su testimonio, el señor Weber Carrillo pre-sentó al perito psiquiatra Dr. Víctor Liado Díaz para inten-tar probar los daños alegados. La evaluación psiquiátrica se realizó mediante exámenes y entrevistas al señor Weber Carrillo. Sentencia del Tribunal de Primera Instancia, pág. 7, Apéndice, pág. 560. Surge de los autos que el doctor Liado Díaz no brindó tratamiento psiquiátrico al señor Weber Carrillo. Id. La impresión diagnóstica que hizo el doctor Liado Díaz del señor Weber Carrillo fue una puntua-ción de sesenta en el Global Assesment of Functioning, colocándolo entre la frontera de una condición leve y moderada. íd. También es un hecho probado que el señor Weber Carrillo desarrolló cierta sintomatología postrau-mática, no por el incidente que motivó este caso, sino de-bido al pasado difícil que vivió por la situación política en Chile, tras ser perseguido políticamente por parte del régi-men de Augusto Pinochet. Id. El señor Weber Carrillo no ha recibido tratamiento psiquiátrico por la persecución po-lítica que vivió en Chile. Sentencia del Tribunal de Pri-mera Instancia, pág. 8, Apéndice, pág. 561. Por último, *727 surge de las determinaciones de hechos que emitió el foro primario que las defensas psicológicas del señor Weber Carrillo son muy eficientes y fortalecidas. íd.
A base de la prueba que presentó el señor Weber Carrillo, el foro primario concluyó que no se evidenciaron los daños alegados. Sentencia del Tribunal de Primera Instan-cia, pág. 17, Apéndice, pág. 570. En particular, expresó lo siguiente: “el testimonio del demandante y su perito psi-quiatra, no demostr[aron] que el demandante tuviera an-gustias mentales relacionadas con los hechos que surgen de la demanda. Los daños se centraron en episodios vividos años atrás en su país natal, Chile”. íd., pág. 573.
El Tribunal de Apelaciones tomó constancia de las de-terminaciones de hechos que emitió el foro primario y las confirmó, ya que no se demostró pasión, prejuicio, error manifiesto o parcialidad en la apreciación de la prueba. Véase Sentencia del Tribunal de Apelaciones, pág. 19 esc. 5, Apéndice, pág. 35.
Conforme la Regla 110 de Evidencia, 32 LPRA Ap. VI, el “peso de la prueba recae sobre la parte que resultaría ven-cida de no presentarse evidencia por alguna de las partes”. En este caso, el señor Weber Carrillo tenía el peso de pro-bar las angustias mentales que le causaron las alegadas actuaciones inconstitucionales del Estado. No obstante, durante el juicio el señor Weber Carrillo rehusó declarar sobre esas angustias mentales porque es una persona que no le gusta hablar acerca de sus sentimientos. Ningún otro testigo pudo descubrirlos tampoco. Ante ese escenario, con-sidero que los foros recurridos no erraron al concluir que el señor Weber Carrillo no probó los alegados daños que ori-ginaron el caso que nos ocupa. Nieves Díaz v. González Massas, supra, pág. 845; Ramírez Ferrer v. Conagra Foods PR, supra, pág. 817; Soto Cabral v. E.L.A., supra, pág. 312.
Adviértase que lo que demostró la prueba pericial en este caso fue que el señor Weber Carrillo todavía conserva *728 angustias por el pasado desafortunado que vivió en Chile. No obstante, la prueba no demostró que esas angustias estuvieran atadas a las alegadas actuaciones inconstitucionales del Estado. Es decir, no existe nexo causal entre ellas. Nieves Díaz v. González Massas, supra, pág. 844; López v. Porrata Doria, supra, pág. 152.
Ante la realidad ineludible de que el señor Weber Carrillo no probó los elementos de la causa de acción que pre-sentó, no tiene sentido ni lógica alguna devolver este caso al foro primario para que se evalúe otra vez “la prueba de daños y causalidad presentada por el señor Weber a la luz de la violación de su derecho a la intimidad”. Opinión del Tribunal, pág. 716. De forma implícita, la Opinión del Tribunal le otorga una segunda oportunidad al señor Weber Carrillo para que intente convencer al Tribunal de Primera Instancia de los alegados daños sufridos. Además, el Tribunal intenta influenciar la discreción del foro primario por-que sugiere que el “expediente del caso no está desprovisto de evidencia sobre daños”. Id., pág. 716 esc. 68. Esa actua-ción lacera los principios más elementales de nuestro sis-tema adversativo. El señor Weber Carrillo tuvo la oportu-nidad de probar su caso ante el foro primario y no lo logró. La adjudicación correcta de este caso requiere que confir-memos los dictámenes recurridos que desestimaron la demanda.
Ante esa realidad, es innecesario entrar a discutir el planteamiento de violación del derecho de intimidad que esgrime el señor Weber Carrillo en su alegato. Aun si concluyéramos que hubo una violación del derecho de intimi-dad, comoquiera tendríamos que desestimar la demanda que nos ocupa ante la ausencia de daños probados. Cual-quier determinación nuestra en otra dirección serían “ ‘meras expresiones judiciales excesivas e innecesarias’ ”. Ortiz Chévere et al. v. Srio. Hacienda, supra, pág. 980, citando a Ortiz v. Panel F.E.I., supra, pág. 253.
*729 Por último, en vez de fundamentar su dictamen como una protección de la confidencialidad de las fuentes de un periodista al amparo del Art. II, Sec. 4 de la Constitución de Puerto Rico, LPRA, Tomo 1, el Tribunal se basa en el derecho más amplio a la intimidad. Art. II, Sec. 8, Const. PR, LPRA, Tomo 1. De ese modo, y sin mayor estudio o análisis, el Tribunal ha creado un requisito de que se noti-fique a cualquier persona, incluyendo aquella sospechosa o investigada por la posible comisión de un delito, que el Fiscal ha solicitado su registro de llamadas. Con eso se anula esa herramienta de investigación para todo efecto práctico. En fin, actuando en total abstracción de la realidad cotidiana del Puerto Rico de hoy, el Tribunal ha convertido “la factura más ancha en la factura más costosa jamás pagada por el Pueblo de Puerto Rico”. (Énfasis suprimido). RDT Const. Corp. v. Contralor I, 141 DPR 424, 469 (1996) (Opinión concurrente del Juez Asociado Señor Negrón García).
IV
Por los fundamentos antes expuestos, disiento respetuo-samente del curso seguido por este Tribunal. Procede con-firmar los dictámenes recurridos y desestimar la demanda de autos. Es improcedente devolver este caso al foro prima-rio para conceder una segunda oportunidad de evaluar la prueba de unos daños inexistentes.

 El 7 de junio de 2006, el Tribunal de Primera Instancia dictó una sentencia parcial desestimando la demanda en cuanto a Univisión y Cingular. El 2 de diciem-bre de 2006, el mismo tribunal dictó otra sentencia parcial desestimando con peijui-cio en cuanto al entonces Fiscal General, Ledo. Pedro Gerónimo Goyco, y en cuanto al ex Secretario de Justicia, Ledo. William Vázquez Irizarry. Posteriormente, el Tribunal de Primera Instancia declaró “no ha lugar” la moción de sentencia sumaria presentada por el Estado. El Estado presentó una solicitud de certiorari ante el Tribunal de Apelaciones. El foro apelativo intermedio modificó la resolución recurrida a los efectos de desestimar la demanda contra los fiscales Francisco Viera Tirado y Miguel Colón Ortiz, al amparo de la doctrina de inmunidad condicionada. El señor Weber Carrillo acudió ante este Tribunal mediante una petición de certiorari, que fue denegada mediante una Resolución de 21 de diciembre de 2007.