Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ANNETTE VAILLANT<br><br>Recurrido<br><br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO PLAZA REAL CAPARRA; JUNTA DE DIRECTORES DEL CONDOMINIO PLAZA REAL CAPARRA<br><br>Recurrente | KLRA202400635 | *Revisión* Administrativa Procedente del Departamento de Asuntos del Consumidor<br><br>Sobre: Ley de Condominios<br><br>Caso Núm.: C-SAN-2022-0011086 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de marzo de 2025.

Comparecen ante nos por conducto de su representación legal el Consejo de Titulares del Condominio Plaza Real Caparra y la Junta de Directores del Condominio Plaza Real Caparra (en adelante: "parte recurrente o recurrentes"). Mediante el presente recurso de revisión judicial solicitan que revoquemos la *Resolución* emitida y notificada el 9 de septiembre de 2024, por el Departamento de Asuntos del Consumidor (en adelante: "DACo"). En esta, el DACo declaró *Ha Lugar* la querella incoada por la Sra. Annette Vaillant (en adelante: "parte recurrida o recurrida"),[1] y ordenó a los recurrentes a pagar la suma de $3,112.76.

Adelantamos que, por los fundamentos que expondremos a continuación, **confirmamos** la *Resolución* recurrida.

---

[1] En la *Resolución* emitida por DACo aparece como querellante la Sra. Annette Vaillant, sin embargo, nos hemos percatado que hay otras variaciones en el expediente ante nuestra consideración, tales como; Ana Del Carmen Vaillant Ugarriza; Ana Del Carmen Vailant Ugarriza; y Annette Valian. Por lo que, aun con las variaciones en el nombre, entendemos que se refiere a la misma persona recurrida-querellante.

Número Identificador
SEN2025 _____

**-I-**

El **2 de marzo de 2022**, la recurrida presentó una querella ante el DACo contra la parte recurrente y Chubb Insurance Company of Puerto Rico (en adelante: "Chubb").[2] En dicha querella, alegó que su apartamento sufrió daños estéticos y estructurales como consecuencia de unas filtraciones de agua provenientes del techo y paredes. Además, señaló que, desde marzo de 2021, requirió a los recurrentes que investigaran, repararan y dieran mantenimiento al techo y tuberías que provocaban la filtración. Añadió que la actuación de los recurrentes fue una pasiva en torno a la solución del problema. Dado lo anterior, la parte recurrida solicitó al DACo que ordenase a los recurrentes hacer las reparaciones necesarias para corregir el problema de filtración.

Por su parte, los recurrentes presentaron su contestación a la querella el **11 de mayo de 2022**.[3] En esencia, negaron todas las alegaciones en las que se les imputaba acciones u omisiones negligentes, así como los daños o pérdidas a causa de ello. Adujeron que *"[l]a querella tal y como está redactada no amerita la concesión de algún remedio."*[4] Asimismo, negaron haber incumplido con la Ley de Condominios y el Reglamento del Condominio Plaza Real Caparra.

El **28 de septiembre de 2022**, la parte recurrida enmendó la querella para aumentar la cuantía de las reparaciones realizadas a $32,405.00.[5] Oportunamente, los recurrentes sometieron su "*Contestación a Querella Enmendada*".[6]

---

[2] Véase, Apéndice del Recurrente, págs. 70-74.
[3] Véase, Apéndice del Recurrente, págs. 63-65.
[4] Véase, Apéndice del Recurrente, pág. 64.
[5] El 26 de abril de 2022 el DACo notificó a las partes sobre la presentación de la querella. Véase, Apéndice del Recurrente, págs. 66-69. Posteriormente, el 13 de octubre de 2022 se notificó a las partes la enmienda a la querella. Véase, Apéndice del Recurrente, págs. 34-36.
[6] De los documentos en nuestro expediente surge que los recurrentes presentaron la *"Contestación a Querella Enmendada"* el 11 de mayo de 2022, sin embargo, por ser una fecha previa a la enmienda, entendemos que se trata de un error en la fecha. Véase, Apéndice del Recurrente, págs. 32-33.

Posteriormente, el **29 de junio de 2023** Chubb presentó una "*Moción Solicitando Desestimación por Falta de Jurisdicción*", y el **30 de enero de 2024** solicitó que se diera por sometida sin oposición dicha moción de desestimación.[7]

Así las cosas, el DACo emitió una *Resolución Parcial* el **23 de febrero de 2024**, mediante la cual desestimó la querella contra Chubb, por entender que carecían de jurisdicción.[8] En lo pertinente, DACo señaló que:

> [E]s nuestra determinación que carecemos de jurisdicción contra la compañía aseguradora, *Chubb Insurance Co de Puerto Rico*, toda vez que esta emitió una determinación denegando indemnizar a la querellante bajo los términos de la póliza por entender que la reclamación de la querellante quedaba excluida de esta. Si la parte querellante no estaba conforme con tal determinación, corresponde al Comisionado de Seguros atender la petición de la querellante en cuanto a la denegación.[9]

Más adelante, el DACo celebró una vista administrativa el **27 de junio de 2024**, a la que comparecieron, entre otros, la parte recurrida representada por el Lcdo. Luis Molero Rabassa y los recurrentes representados por el Lcdo. Raúl del Manzano Román.[10]

Luego de aquilatar la prueba presentada y la totalidad del expediente administrativo, el **9 de septiembre de 2024** el DACo emitió una *Resolución*.[11] En la cual, declaró *Ha Lugar* la querella e hizo las siguientes determinaciones de hechos:

> 1. *La querellante es titular del apartamento 107 del Condominio Plaza Real Caparra mediante escritura de Compraventa otorgada el 16 de diciembre de 2013 ante el notario Fernando Font Lee.*
> 2. *El Condominio Plaza Real Caparra se encuentra sometido al régimen de propiedad horizontal.*
> 3. *Para el mes de marzo de 2021, la querellante no estaba viviendo en Puerto Rico debido a que perdió su trabajo. El hijo de la querellante pasó a vivir en el apartamento objeto de esta querella. La querellante recibió una llamada de su hijo informándole la existencia de filtraciones en el área del laundry.*
> 4. *En ese momento la querellante comienza a comunicarse con Junta de Directores que se encontraba en funciones.*

---

[7] Véase, Apéndice del Recurrente, pág. 15.
[8] *Íd.*, págs. 15-19.
[9] *Íd.*, pág. 16.
[10] Véase, Apéndice del Recurrente, pág. 8.
[11] Véase, Apéndice del Recurrente, págs. 8-14.

*El primer correo electrónico de la querellante hacia la Junta de Directores fue <u>11 de marzo de 2021</u>. En esa misma fecha, la administradora contestó que estaría comunicándose con el vecino de piso superior para ayudarle a resolver la situación.*

5. *<u>El 26 de marzo 2021</u>, la querellante se comunicó con la administradora solicitando el estatus del arreglo de las filtraciones. En esa misma fecha la administradora contestó que ya le había dado respuesta a sus preguntas.*

6. *El <u>30 de marzo de 2021</u> la querellante envió un correo electrónico a la administradora solicitando la información de la compañía aseguradora. La administradora proveyó la información solicitada por la querellante. <u>Además, le informó que iría un plomero a realizar un estudio de cámara para determinar la procedencia de la filtración</u>.*

7. *El <u>10 de agosto de 2021</u> la querellante envió una comunicación a la parte querellada requiriéndole a la Junta de Directores la reparación de las filtraciones de agua.*

8. *Posteriormente, el <u>7 de febrero de 2022</u> el representante legal de la parte querellante envió una carta a la parte querellada <u>con el propósito de evitar presentar una querella ante este foro</u>.*

9. *La querellante envió un video del estado del techo de su apartamento. La filtración comenzó en el laundry y continuó hacia la sala y el pasillo. Además, se veían rastros de hongo. El hijo eventualmente se fue del apartamento y la querellante no podía alquilarlo ni venderlo.*

10. *Para el mes de <u>junio de 2022</u>, la Junta de Directores envió un plomero de nombre Osorio para realizar una investigación en las líneas y determinar qué provocaba las filtraciones.*

11. *El <u>5 de julio de 2022</u>, el Consejo de Titulares se reunió en asamblea y aprobó la reparación de las tuberías comunales en la línea 7 y 2 del inmueble, con un retiro de la cuenta de reserva por la cantidad de $8,731.00.*

12. *El plomero contratado por la parte querellada <u>nunca</u> cumplía cuando la parte querellada requería que entregase los reportes y no los daba. Debido a lo anterior, contrataron otro plomero; CRN Professional Services.*

13. *<u>La parte querellada contrató para que un perito inspeccionara el apartamento superior al de la querellante y determinó que las filtraciones provenían del jacuzzi que tiene el titular del apartamento 207</u>.*

14. *La parte querellada no llevó a cabo reparaciones en la línea comunal.*

15. *Las labores de reparación fueron realizadas y las filtraciones cesaron. Una vez finalizadas las reparaciones y que cesaron las filtraciones, la querellante reparó su apto.*

16. *La parte querellante solicita que le sea reembolsada la suma de $6,225.52 por concepto de lo pagado por las reparaciones dentro de su apartamento.[12]*

---

[12] *Íd.*, págs. 8-10. *Subrayado nuestro.*

El DACo concluyó que le asistía la razón a la parte recurrida y, en lo pertinente, señaló que:

> *[A]un cuando la parte querellada [recurrentes] no es la causante directa del daño, <u>entre sus deberes se encuentra actuar de manera ágil para determinar la procedencia de filtraciones que afectaban el apartamento de la querellante [recurrida]. La parte querellada [recurrentes] ha actuado de manera temeraria en el manejo de la situación</u>*.[13]

Además, indicó que los recurrentes fallaron en proveer a la recurrida información concreta y certera sobre la causa de la humedad y filtraciones que afectaban su apartamento. Por lo que, les impuso a los recurrentes un 50% de responsabilidad por el retraso en el manejo de la reclamación, así como por la falta de información constante, aun ante solicitudes insistentes de la parte recurrida.[14] Razón por la cual, ordenó una indemnización de $3,112.76.[15]

Inconformes, los recurrentes presentaron el **30 de septiembre de 2024** una "*Moción en Solicitud de Reconsideración*".[16] Entre otras cosas, solicitaron que se dejara sin efecto la resolución dictada, pues alegaron que se basó en la alegada inexistencia de nexo causal entre las acciones de los recurrentes y el daño sufrido por la recurrida. Enfatizaron que no son el causante directo del daño sufrido por la recurrida, pues no se trata de un daño originado en los elementos comunes del condominio, sino de uno privativo proveniente del apartamento superior.

Transcurrido el plazo de 15 días sin que DACo acogiera la solicitud de reconsideración, el **13 de noviembre de 2024**, los recurrentes presentaron ante este Tribunal la presente revisión judicial de epígrafe y señalaron los siguientes errores:

> 1) *Erró el Honorable Departamento de Asuntos del Consumidor (DACO) al condenar a la parte aquí Recurrente a pagar una indemnización por el 50% de los daños ($3,112.76 dólares) a pesar de que la prueba presentada*

---

[13] Véase, Apéndice del Recurrente, pág. 11. *Subrayado nuestro.*
[14] *Íd.*, pág. 12.
[15] *Íd.*
[16] Véase, Apéndice del Recurrente, págs. 3-7.

*y creída por la agencia demostró que quien provocó las filtraciones que afectaron el apartamento lo fue el apartamento que queda superior al de la Recurrida, el apartamento 207.*

2) *Erró el Honrable Departamento de Asuntos del Consumidor (DACO) al no establecer en su Resolución la fórmula de cómo llegó a la conclusión de que la parte Recurrente es responsable de pagar el importe equivalente al 50% de los daños.*

Así pues, el **26 de noviembre de 2024** la parte recurrida presentó su oposición y expresó su inconformidad con la determinación del DACo en concederle solo el 50% de los daños. Alegó que la responsabilidad de los recurrentes debió ser una total. Dada la comparecencia de ambas partes, procedemos a resolver el asunto.

## -II-

## -A-

Es norma reiterada en nuestro ordenamiento que los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les ha delegado.[17] El Tribunal Supremo de Puerto Rico estableció que las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección.[18] Por esto, es necesario que quien desee impugnar dichas decisiones presente evidencia suficiente para derrotar la presunción de validez de la que gozan las mismas y no descanse en meras alegaciones.[19]

Conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción.[20] La revisión judicial de una determinación

---

[17] *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[18] *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).
[19] *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).
[20] *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010).

administrativa se circunscribe a determinar si: **(1)** el remedio concedido por la agencia fue apropiado; **(2)** las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y **(3)** las conclusiones de derecho fueron correctas.[21]

La sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUGPR) dispone que las determinaciones de hecho realizadas por una agencia administrativa serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia sustancial que surja del expediente administrativo al ser considerado en su totalidad.[22] Desde luego, por evidencia sustancial se entiende *"[a]quella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*.[23] Es por ello, que la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[24] **Así, nuestra función apelativa se circunscribe a considerar si la determinación de la agencia es razonable, ya que lo que se persigue es evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.**[25]

Por otro lado, y en cuanto a las conclusiones de derecho, la referida Sección 4.5 de la LPAUGPR nos faculta a revisarlas en toda su extensión.[26] No obstante, ello no implica que tenemos la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia.[27] Es  decir, cuando un tribunal revisor llega a un

---

[21] *Pacheco v. Estancias, supra.*
[22] Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 LPRA sec. 9675; *Pacheco v. Estancias, supra*, a la pág. 432.
[23] *Íd. Énfasis nuestro.*
[24] *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[25] *Íd. Énfasis nuestro.*
[26] 3 LPRA sec. 9675.
[27] *Otero v. Toyota, supra.*

resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.[28] En otras palabras, también se ha dicho que, al revisar la determinación de la agencia, el criterio a aplicarse no debe ser si la determinación administrativa es la más razonable o la mejor, según el entender del tribunal revisor. En su lugar, el parámetro que gobierna estas situaciones es si la interpretación del ente administrativo de sus reglamentos y de las leyes que le corresponde aplicar es razonable.[29] Por lo tanto, **como tribunal revisor solo podemos sustituir el criterio de la agencia por el nuestro, cuando no pueda encontrar una base racional para explicar la determinación administrativa**.[30]

-B-

El estado de derecho vigente en materia de condominios es la Ley Núm. 129 de 16 de agosto de 2020, conocida como la *"Ley de Condominios de Puerto Rico"* (en adelante: "Ley de Condominios 2020"). Esta ley tiene el propósito de *"[v]iabilizar la propiedad individual sobre un apartamiento, que forma parte de un edificio o inmueble sometido al régimen de propiedad horizontal"*.[31] Sabido es que la administración de todo inmueble constituido en propiedad horizontal se regirá por lo dispuesto en la Ley de Condominios 2020, y además por un reglamento que deberá insertarse en la escritura de su constitución.[32]

---

[28] *Íd.*
[29] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006).
[30] *Íd. Énfasis nuestro.*
[31] Ley Núm. 129-2020, según enmendada, conocida como *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921a *et. seq. Énfasis nuestro.*
[32] 31 LPRA sec. 1921*l*.

En lo que concierne sobre los deberes de los titulares, el Artículo 39 de la Ley de Condominios 2020, en lo pertinente, establece:

> *El uso y disfrute de cada apartamento estará sometido a las reglas siguientes:*
> *(a) [...]*
> *(b) [...]*
>   *4) Cada titular deberá ejecutar a sus únicas expensas las obras de modificación, reparación, limpieza, seguridad y mejoras de su apartamento, sin perturbar el uso y goce legítimo de los demás. Será deber ineludible de cada titular realizar las obras de reparación y seguridad, tan pronto sean necesarias para que no se afecte la seguridad del inmueble ni su buena apariencia. Todo titular u ocupante de un apartamento vendrá obligado a permitir en su apartamento las reparaciones o trabajos de mantenimiento que exija el inmueble, permitiendo la entrada al apartamento para su realización.*[33]
>   *En casos donde exista una situación de emergencia o de urgencia que requiera del acceso inmediato al apartamento para realizar obras de mitigación o reparación y no sea posible localizar al titular u ocupante del apartamento para que autorice el acceso al mismo, la Junta de Directores tendrá facultad para autorizar la entrada del personal necesario para remediar dicha situación. Para propósitos de este Artículo, se entenderá por situación de emergencia o urgencia, aquellas que requieran de obras de mitigación o reparación para evitar daños mayores a la propiedad del titular, al inmueble o la propiedad de los restantes titulares o que ponga en peligro la vida y salud de titulares y/o terceros. Cuando sea necesario el acceso al interior de un apartamento y no haya sido posible contactar al titular u ocupante, a pesar de haber realizado las gestiones necesarias para contactarlo, se levantará un acta recogiendo las circunstancias que dieron paso a la intervención y un recuento de lo acontecido.*
>   *<u>Cuando la Junta de Directores o el Agente Administrador tengan que intervenir para la detección de una filtración o problema que esté afectando áreas privadas, comunes o comunes limitadas y surja de la investigación que el problema proviene de un apartamento, el titular de dicha unidad tendrá que rembolsar los gastos en que incurra el condominio para su reparación.</u>*[34] *Estos gastos pasarán a formar parte de la próxima cuota de mantenimiento, de forma que, de no pagarse el gasto junto con esta, la totalidad de la deuda será considerada como un plazo en atraso. El monto del gasto será notificado inmediatamente al titular.*
> *[...].*[35]

En síntesis, el antes mencionado artículo dispone que los titulares de los apartamentos vendrán obligados a realizar las obras

---

[33] 31 LPRA sec. 1922k. *Énfasis nuestro.*
[34] *Íd. Énfasis nuestro.*
[35] *Íd. Énfasis nuestro.*

necesarias para asegurar que no se afecte la seguridad y buena apariencia del inmueble. Sin embargo, hace la distinción de que en caso de la Junta de Directores o el Agente Administrador tener que intervenir para la detección de una filtración, o problema que afecte las áreas privadas o comunes y el problema provenga de un apartamento, el titular deberá reembolsar al condominio los gastos incurridos para su reparación.

Por su parte, con relación a los poderes y deberes de la Junta de Directores, la Ley de Condominios 2020 establece en su Artículo 53 que; "*[e]l Director o la Junta de Directores constituye el órgano ejecutivo de la comunidad de titulares.*" En específico la ley establece que:

> *El Director o la Junta de Directores constituye el órgano ejecutivo de la comunidad de titulares. […]. El cuerpo directivo tendrá los siguientes deberes y facultades:*
>
> *a) Atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares.*
>
> [...]
>
> *c) Dirigir los asuntos financieros concernientes a las recaudaciones y pagos y anotar detalladamente en un libro los activos y obligaciones, así como también, las partidas de ingresos y gastos que afecten al inmueble y a su administración, fijándoles por orden de fecha y especificando los gastos de conservación y reparación de los elementos comunes y tener disponibles para su examen por todos los titulares en días y horas hábiles que se fijarán para general conocimiento tanto del libro expresado como los comprobantes acreditativos de las partidas anotadas.*
>
> [...]
>
> *g) Atender a la conservación del inmueble y disponer las reparaciones ordinarias, conforme dispone el presupuesto anual aprobado por el Consejo de Titulares y en cuanto a las extraordinarias, adoptar las medidas necesarias previa aprobación del Consejo de Titulares.*
> [...].[36]

Entre los deberes y facultades de la Junta de Directores se encuentra atender todo lo relacionado a la administración y funcionamiento del régimen, así como hacer las oportunas

---

[36] 31 LPRA sec. 1922y.

advertencias y apercibimientos a los titulares. También es su deber atender a la conservación del inmueble, y disponer las reparaciones ordinarias. En lo relacionado a los asuntos financieros sobre recaudaciones y pagos que afecten al inmueble, la Junta de Directores deberá tener disponible los documentos para ser examinados por los titulares.

Por su parte, en lo concerniente a los poderes y deberes del Secretario de la Junta de Directores, el Art. 55 inciso (f) dispone que el Secretario de la Junta de Directores:

> *f) [C]ustodiará y hará disponible para la revisión de los titulares que así lo soliciten, todo documento perteneciente al Consejo que obre en los archivos del condominio, tales como, pero sin limitarse a, documentos relacionados a la actividad fiscal del condominio, las actas de las asambleas del Consejo de Titulares, las actas de las reuniones de la Junta de Directores, y los contratos adjudicados. No será hará disponible para la revisión de un titular, la información personal de los demás titulares, a menos que otro Artículo de esta Ley así lo permita, o que el titular haya previamente autorizado la divulgación de dicha información.*[37]

En resumen, constituye una obligación del Secretario de la Junta de Directores tener disponible para la revisión de los titulares los documentos que obren en sus archivos y que estén relacionados al condominio.

**-C-**

En nuestra jurisdicción la responsabilidad civil por actos u omisiones culposas o negligentes extracontractuales se rige por el *Código Civil de Puerto Rico* (en adelante; "Código Civil 2020").[38] El articulado aplicable es el Artículo 1536 del actual Código Civil.[39] Este establece que la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo.[40] Esta doctrina reconoce que toda acción sobre responsabilidad por daños y perjuicios procede únicamente si concurren los siguientes elementos: **(1)** una acción u omisión culposa o negligente; **(2)** la producción de un daño real; **(3)**

---

[37] 31 LPRA sec. 1923 inciso (f).
[38] Ley Núm. 55-2020, según enmendada, conocida como "*Código Civil de Puerto Rico 2020*", 31 LPRA sec. 5311 *et. seq.*
[39] 31 LPRA sec. 10801.
[40] *Íd.*; Véase, además, *Cintrón Adorno v. Gómez*, 147 DPR 576, 598 (1999).

un nexo causal entre el daño y la conducta culposa o negligente.[41] Por su parte, el Artículo 1545 del Código Civil 2020 añade que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización en proporción al grado de tal imprudencia.[42]

Una vez el tribunal sentenciador determina la existencia de los daños alegados y la relación o nexo causal entre el daño y quien lo provoca, procede entonces estimar a cuánto ascenderá la compensación monetaria que será adjudicada a favor de la parte perjudicada. Esto pues el propósito de la ley es proveer a todo aquel que sufra daño un medio de resarcimiento contra aquellos que no ejercen el debido cuidado en sus actuaciones.

### -III-

En síntesis, los recurrentes solicitan nuestra intervención para que revoquemos la determinación del DACo y, en consecuencia, declaremos que no son responsables de los daños sufridos por la recurrida. Señalan que el DACo erró al haberles condenado a indemnizar a la parte recurrida, y que a su vez, incidió al no establecer la fórmula de cómo calcularon la cuantía de los daños.

Por su parte, la recurrida nos plantea que se le debe dar deferencia a la determinación del DACo. Sin embargo, dicha parte muestra inconformidad con la cuantía concedida, pues señala que la responsabilidad de los recurrentes debió ser total, y no de un 50% conforme ordenado.

Dado los hechos del caso y el expediente ante nuestra consideración, nos invita a confirmar la *Resolución* recurrida. Veamos.

---

[41] *Inmobiliaria Baleares, LLC v. Benabe González, 2024 TSPR 112* citando a *Mena Pamias vs. Jiménez Meléndez,* 212 DPR 758, 768 (2023).*; Nieves Díaz v. González Massas,* 178 DPR 820, 843 (2010).
[42] 31 LPRA sec. 10810.; *García v. ELA,* 163 DPR 800, 809 (2005).

Surge de los hechos que, desde el **11 de marzo de 2021** la administradora del condominio tenía conocimiento de las filtraciones y se comprometió a comunicarse con el titular del apartamento superior. Nada pasó. Así, el **26 de marzo de 2021**, el **30 de marzo de 2021** y el **10 de agosto de 2021** se le cursó comunicación a la parte recurrente, sin embargo, no tomó acción para encarar el problema de filtración. Incluso, el **7 de febrero de 2022**, el representante legal de la parte recurrida le envió una carta a la parte recurrente con el propósito de evitar presentar una querella ante el DACo. Todavía más, la recurrida envió un video del estado del techo de su apartamento que mostraba que la filtración comenzaba en el área de la lavandería y continuaba hacia la sala y el pasillo, con lo cual, se veían rastros de hongo. No obstante, la parte recurrente se volvió a cruzar de brazos. Ello provocó que eventualmente el hijo de la recurrida se fuera del apartamento y ésta no pudiera alquilarlo ni venderlo.

Como si fuera poco lo antes dicho, no es hasta el mes de **junio de 2022**, que la Junta de Directores envió un plomero de nombre Osorio para que realizara una investigación en las líneas y determinara qué situación estaba provocando las filtraciones. Ante esa investigación, el **5 de julio de 2022** el Consejo de Titulares se reúne en asamblea y aprueba la reparación de las tuberías **comunales** en la línea 7 y 2 del inmueble, con un retiro de la cuenta de reserva por la cantidad de $8,731.00.[43] Sin embargo, el plomero contratado no cumplía con los requerimientos de entregar los reportes, por lo cual, hubo que contratar a otro plomero.

Finalmente, la parte recurrente contrató a un perito para que inspeccionara el apartamento superior al de la recurrida y determinó (distinto a la primera investigación) que las filtraciones provenían

---

[43] Esas reparaciones no se hicieron.

del jacuzzi que tenía el titular del apartamento superior. Entonces, se encaró el problema de filtración y el problema fue resuelto.

A todas luces el expediente refleja que la parte recurrente ignoró su obligación de intervenir diligentemente para detectar la procedencia de la filtración, así como reparar el área afectada, aun cuando se tratase de un área privativa.

Enfatizamos, además, que en nuestro ordenamiento jurídico rige la norma de que todo el que cause daño a otro, sea por acción u omisión en su deber de actuar, viene obligado a repararlo.[44] Si bien la parte recurrente no son los causantes directos del daño sufrido por la recurrida, su inacción ocasionó que los daños persistieran y se agravaran. Así lo resolvió el DACo al determinar que éstos debían indemnizar a la parte recurrida por el retraso en el manejo de la reclamación y la falta de brindar oportunamente la información solicitada.

Por otra parte, ambas partes nos plantean que el DACo erró al imponer una indemnización del 50 por ciento de lo reclamado sin establecer una fórmula de cómo llegó a dicha partida.

No surge de los expedientes, ni de la evidencia presentada, que la agencia actuó de manera arbitraria, ilegal, caprichosa o irrazonable, al imponer el 50 por ciento de lo reclamado por la parte recurrida. Nótese, que tomó en consideración el tiempo transcurrido, la falta de acción de los recurrentes para identificar la causa de las filtraciones y que dichas filtraciones provenían del piso superior. Razón por la cual, dicha determinación merece nuestra deferencia.[45]

En conclusión, no creemos prudente ni necesario sustituir el criterio del DACo por el nuestro. Sobre todo, cuando de forma reiterada recalcamos que el expediente ante este Tribunal de

---

[44] *Cintrón Adorno v. Gómez, supra.*
[45] *Mun. de San Juan v. CRIM, supra.*

Apelaciones no surge que la determinación del DACo fuese arbitraria, ilegal, caprichosa o de naturaleza tan irrazonable que constituyera un abuso de discreción. Recordemos que el parámetro que gobierna la revisión judicial es *si la interpretación del ente administrativo de sus reglamentos y de las leyes que le corresponde aplicar es razonable.*[46] Somos del criterio que la interpretación del DACo y su apreciación de la evidencia fue razonable, por lo cual, confirmamos la determinación recurrida.

**-IV-**

Por los fundamentos antes expresados, se **confirma** la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[46] *Hernández Álvarez v. Centro Unido, supra.*